**Sung Ja OUM and Young Deuk Oum, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 79–1060.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1979.

Decided Jan. 2, 1980.

Samuel Jay Levine and Richard A. Boswell, Washington, D. C., for petitioners.

Margaret J. Perry, Dept. of Justice, Washington, D. C. (James P. Morris, Dept. of Justice, Washington, D. C., on brief), for respondent.

Before BRYAN, Senior Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge.

Sung Ja Oum and her husband, Yong Deuk Oum, natives of Korea, entered the United States on a student visa on December 3, 1971, and a business visa on April 20, 1972, respectively. Following a full hearing in deportation proceedings, in which they admitted they were deportable, the immigration judge on December 3, 1973, denied their request for a discretionary adjustment of status to permanent residents, and ordered them deported. · They were allowed, in lieu of deportation by the government, to depart voluntarily, on the condition that they do so by January 3, 1974. They did not comply with the condition.

Since that date there has ensued a plethora of steps which have served to keep the Oums in this country: an administrative appeal, an appeal to the United States Court of Appeals for the District of Columbia, motions to reopen and to reconsider, petitions to classify Mrs. Oum as an immediate relative of an American citizen and as a permanent resident, a petition to classify Mr. Oum as an accompanying spouse, a motion for stay of deportation, and an application for suspension of deportation. While these many maneuvers have had the practical effect of frustrating deportation, not one has yielded a result favorable to the Oums.

With procedural devices apparently exhausted, the United States Court of Appeals for the District of Columbia having affirmed on February 24, 1976, the immigration judge's decision to order deportation and to deny change to permanent resident status, a final order of deportation entered by the Naturalization Board of Appeals on January 16, 1978, outstanding, warrants of deportation issued May 23, 1978, in effect, and the Oums scheduled to report for deportation on ·January 30, 1979, one would have thought that the time had

indeed come for the Oums to accept the inevitable. Not so, however, for the Oums, through their counsel on January 30, 1979, petitioned this court for review of what was characterized by them as "a final order of deportation of January 26, 1979 by the Immigration and Naturalization Service." [1]

The lodging in this court of that "petition for review of deportation order" automatically operated as a stay of deportation under 8 U.S.C. § 1105a(a)(3). No such stay effect attached, however, to the Oums' January 23, 1979, motion submitted to the district director for stay of deportation (denied on February 5, 1979) or to their January 25, 1979, filing with the Naturalization Board of Appeals of a motion to reopen, based on a contemporaneous application for suspension of deportation (denied on April 11, 1979).

■ The petition to this court was manifestly without merit. The action supposedly appealed from constituted no order at all, and certainly no order which we have jurisdiction to review. *Cheng Fan Kwok v. Immigration and Naturalization Service*, 392 U.S. 206, 216, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968). The most recent action of the Immigration and Naturalization Service which conceivably could qualify as a "deportation order," the purported subject of the petition for review, was the January 16, 1978, denial of a motion to reopen, in which deportation was ordered. If it is to that action of the Immigration and Naturaliza-

tion Service to which the petition for review was actually addressed, the petition was plainly untimely. The maximum period of six months, provided for in 8 U.S.C. 1105a(a)(1), had, in any view of things, expired on July 17, 1978 (July 16, 1978, having been a Sunday).[2] Hence, the petition for review was without justification, filed to effect a statutory stay manifestly allowed only on the assumption that the petition for review to a court of appeals would raise justiciable issues.

■ The filing of the petition in these circumstances amounted to an abuse of process, and a dereliction of the duty owed by counsel to this court. It was, in the kindest view one may take of it, frivolous. We should, had the government, as the other party to the case, requested it, have been disposed to deny the petition as frivolous, to reprimand the petitioners' counsel for filing it, and to assess double costs taxed personally against the attorney. 28 U.S.C. § 1912; F.R.A.P. 38; *Acevedo v. Immigration and Naturalization Service*, 538 F.2d 918 (2d Cir. 1976). However, the government, at oral argument, specifically disavowed any desire for imposition of sanctions.

While denial of the petition for review purely on grounds that it was not timely and utterly frivolous is, therefore, indicated, there are troubling circumstances which make us hesitant to follow so restricted a course. We can well imagine

---

1. This is a most questionable way in which to describe what occurred on January 26, 1979. The district director for Maryland, where the Oums resided, wrote a letter on that date responding to correspondence of counsel for the Oums dated January 22, 1979. Counsel for the Oums had requested forwarding to the Board of Immigration Appeals of the most recent motion to reopen. The district director went on, in an informational vein, to point out that the filing of a motion to reopen would not serve to stay the execution of any decision by the Immigration and Naturalization Service. He added: "You are aware, of course, these subjects are scheduled to report for deportation at 10:30 am, on January 30, 1979".

In short, the "action" to which the petition for review addressed itself was not a final order as to anything, and specifically not a final order of deportation.

2. The appealability of the July 18, 1974, action by the Board of Appeals upholding the immigration judge's order of deportation dated December 3, 1973, was arguably postponed by the succession of motions to reopen. *Reyes v. Immigration and Naturalization Service*, 571 F.2d 505, 507 (9th Cir. 1978). Even according the Oums the benefit of every doubt, the appeal period expired on July 17, 1978.

In light of that fact, we need not tarry to inquire whether even if the petition was timely *res judicata* attached because of the action of the United States Court of Appeals for the District of Columbia in affirming on February 24, 1976, the action of the immigration judge ordering deportation and denying permanent residence status.

that should we simply deny the petition without addressing any possible merits of the case we should be faced with further acts in the charade in the forms of further petitions to review the February 5, 1979, denial of a motion for stay of deportation and the April 11, 1979, denial of the motion to reopen and accompanying application for suspension of deportation, or even from a denial of yet another meritless petition to reopen (filed to obviate the obvious time bar existing with respect to the February 5, 1979, and April 11, 1979, orders). We are reluctant to set the stage for such patently unmeritorious and untimely petitions for review which would be taken simply to obtain the benefit of a further statutory stay pursuant to 8 U.S.C. § 1105a(a)(3), and thereby put off the day of reckoning, in hope against farfetched hope that the Oums will obtain something they have never been entitled to, and which their conduct in this matter does nothing to enhance their eligibility for.[3]

 Therefore, without intending to indicate that in a case in which the question might arise without such considerations present . . . we would determine that jurisdiction exists to review orders not extant when the petition for review was filed, we proceed to consider the merits of the objections of the petitioners to the February 5, 1979, and April 11, 1979, orders.[4] As

for the February 5, 1979, denial by the district director of the motion for a stay of deportation, we have no occasion to investigate the substantiality of the district director's reasons. His action was simply not reviewable by us. *Cheng Fan Kwok v. Immigration and Naturalization Service*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968). When we turn to the action of the Board of Appeals on April 11, 1979, denying the latest motion of the Oums to reopen and the associated application for suspension of deportation, we find that the materials presented by the Oums were inadequate to supply a basis for the relief they sought. In the first place, they submitted no affidavits or other material demonstrating the existence of significant new evidence. *See* 8 C.F.R. §§ 3.8, 103.5, 242.22. There was, consequently, no basis for the reopening of the proceedings. *Acevedo v. Immigration and Naturalization Service*, 538 F.2d 918, 920 (2d Cir. 1976); *see also Gena v. Immigration and Naturalization Service*, 424 F.2d 227, 232 (5th Cir. 1970).

Moreover, among the items which the Oums were required by 8 U.S.C. § 1255(a) to establish *prima facie* if any basis for relief was to be deemed to exist even for the Board of Appeals to consider in its discretion sufficient to justify reference to an immigration judge are: "(2) the alien is eligible to receive an immigrant visa and is

---

**3.** The unjustifiable consequences, unintended by Congress when it made a petition for review the automatic occasion for a stay, could, no doubt, be minimized through exercise of our discretionary authority to dissolve the statutory stay. *See Schieber v. Immigration and Naturalization Service*, 171 U.S.App.D.C. 312, 520 F.2d 44 (D.C.Cir.1975). However, prevention seems to us superior to cure. As an additional preventive measure, we mention that there is precedent which we would not hesitate, in the appropriate case, to apply for disciplinary action, resulting in fine and suspension, where counsel has engaged in the practice of filing frivolous immigration appeals. *In re Bithoney*, 486 F.2d 319 (1st Cir. 1973). In this connection, we repeat the admonition in *Hibbert v. Immigration and Naturalization Service*, 554 F.2d 17, 19 n.1 (2d Cir. 1977): "We wish to caution the Bar against abusing the process of this Court solely to gain delays in deportation. Such conduct is a serious violation of profes-

sional ethics; moreover, it can only create additional equities against the alien."

**4.** *Cf. Richerson v. Jones*, 551 F.2d 918, 922 (3d Cir. 1977) ("[A] premature appeal taken from an order which is *not final* but which is followed by an order that *is final* may be regarded as an appeal from the final order in the absence of a showing of prejudice to the other party.").

While we recognize that we are stretching our jurisdiction to its outer limits, we are doing so in part because of the concession by the government that the granting by us on April 24, 1979, of petitioners' motion to supplement the record by including the papers relevant to the February 5, 1979, and April 11, 1979, actions of the Immigration and Naturalization Service acted to extend the scope of the petition for review to reach those actions. In another case, where the matter was contested, we would not regard our attitude on the jurisdictional issue in this case as of precedential value.

admissible to the United States for permanent residence" and "(3) an immigrant visa is immediately available to him at the time his application is filed." The record before the Board simply does not contain a sufficient basis to permit a finding that the initial *prima facie* showing on those statutory requisites has been made by the aliens. *Cf. Carino v. Immigration and Naturalization Service*, 460 F.2d 1341, 1343 (7th Cir. 1972).

In view of that consideration, it becomes superfluous to consider the impact on the Oums' request for relief of 8 U.S.C. § 1255(c), which denies the relief under 8 U.S.C. § 1255 to "an alien . . . who hereafter continues in or accepts unauthorized employment prior to filing an application for adjustment of status; . . . ." There was, however, ample basis for finding that there had been such unauthorized employment.

Even less necessary is a review of the question of whether the Board of Appeals abused its discretion in determining that extreme hardship had not been made out in the case of Mrs. Oum.[5] Without passing on the question, we observe that the contentions asserted by Mrs. Oum as making out a case of extreme hardship seem weak. For example, she seeks to make much of the possibility that her mother and sisters, though in Korea at the time she applied for suspension of deportation, might soon be emigrating to the United States, on visas issued to them as relatives of a sister of Mrs. Oum, a United States citizen. The attempt to picture Mrs. Oum, alone in Korea, bereft of all family members, fails to take into account that Mr. Oum would be in Korea with her to provide the support of a near relative. It does not appear to us unjust that the mother and sisters, who have not engaged in efforts to prolong an illegal stay in the United States, should now be achieving the status which Mrs. Oum might too have obtained had she returned to Korea and not pursued her attempts to ripen her illegal status into that of a permanent resident.

 Mrs. Oum's effort to raise due process objections because she was not granted a hearing by the Board of Appeals requires no extended discussion. She had made no *prima facie* case, so there was no issue to which a hearing could properly be addressed. A party against whom dismissal, summary judgment, or a directed verdict is entered because his factual allegations or showings are insufficient to create a dispute is not denied due process. By analogy, neither were the Oums.

In summation, the Oums have demonstrated no reasons why they should not be deported, and specifically no impediment exists, with respect to the deportation order, the denial of a stay, or the denial of the motion to reopen and the associated application for suspension of deportation. The mandate shall issue forthwith.

---

5. Mr. Oum's claims were all derivative of Mrs. Oum's, based as they were on his asserted rights as a spouse, which would not even arise unless and until Mrs. Oum succeeded in establishing a change in her status to that of permanent resident.