Kristin Rose GALLANOSA, an infant under the age of 21 years who sues by Mayorico G. GALLANOSA, Jr., her father and next friend; Kathryn May Gallanosa, an infant under the age of 21 years who sues by Mayorico G. Gallanosa, Jr., her father and next friend; Mayorico Sanez Gallanosa, III, an infant under the age of 21 years who sues by Mayorico G. Gallanosa, Jr., his father and next friend; Mayorico G. Gallanosa, Jr.; Rosalinda Gallanosa, Appellees,

v.

UNITED STATES of America; United States Immigration and Naturalization Service of the Department of Justice, Appellants.

No. 85–1656.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1986.

Decided Feb. 27, 1986.

Michael P. Lindemann, Office of Immigration Litigation, U.S. Dept. of Justice (Richard K. Willard, Acting Asst. Atty. Gen., Dawn MacPhee, Asst. Director, Washington, D.C., on brief), for appellants.

I. Steven Krup, Washington, D.C., for appellees.

Before PHILLIPS and SNEEDEN, Circuit Judges, and SENTELLE, United States District Judge, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

The government appeals the district court's grant of a preliminary injunction enjoining the deportation of the Gallanosa family pending the Immigration and Naturalization Service's (INS) complete review of the Gallanosas' application for suspension of deportation. The government argues that the district court lacked jurisdiction, because the Gallanosas had failed to exhaust their administrative remedies. The Gallanosas counter that the necessary medical care of one of the Gallanosas' United States citizen children presented a substantial constitutional question sufficient to confer jurisdiction upon the district court. We hold that the district court lacked jurisdiction because of claimant's failure to exhaust administrative remedies and that this want of jurisdiction was not cured by the claim involving the citizen child's medical needs, as this claim did not rise to the level of a substantial constitutional question. Accordingly, we vacate the preliminary injunction and remand with directions to dismiss the action.

## I

The procedural history of this case is complex and involves numerous INS and district court proceedings. Gallanosa, a Phillipine national, entered the United States in 1975 on a J–1 visa pursuant to 8 U.S.C. § 1101(a)(15)(J) in order to obtain medical training. The visa authorized Gallanosa to remain in this country for no longer than two years and required his return to the Phillipines for at least two years following his medical training before he could become eligible for permanent residence here. Gallanosa was originally accompanied by his wife and one child,

though, they have subsequently had three children born in this country.

After granting a number of extensions of the Gallanosas' stay, the INS instituted deportation proceedings. An immigration judge found the Gallanosas deportable in October of 1983 but granted them six months voluntary departure.[1] When the Gallanosas failed to depart, a warrant of deportation was issued requiring their departure by May 3, 1984.

In response, on May 1, 1984, the Gallanosas filed the first of three motions to reopen deportation proceedings to apply for suspension of deportation with an immigration judge in Dallas (Dallas I).[2] On May 3, 1984, the immigration judge denied the motion. Because the Gallanosas had failed to submit a suspension application and fee, the Dallas I judge found the motion to reopen procedurally defective. He therefore treated the motion as an emergency request for stay of deportation which he denied. The immigration judge also noted that as an exchange visitor, Gallanosa would be ineligible for suspension pursuant to 8 U.S.C. § 1254(f).

The same day the Dallas I motion was denied, the Gallanosas filed the first of two actions in district court. On May 3, 1984, the Gallanosas sought in the United States District Court for the Western District of Oklahoma temporary and permanent injunctive relief barring deportation. In a joint motion to dismiss, the parties agreed that the Gallanosas would file an application for suspension of deportation "immediately" in Oklahoma and that the INS District Director would grant the Gallanosas a six month stay of deportation. The district court dismissed the case without prejudice on May 22, 1984, citing the parties' agreement. *Gallanosa v. Chandler*, No. 84–1137–R (W.D.Okla. May 22, 1984).

The Gallanosas, however, never filed the required application for suspension. On February 11, 1985, eight days before they were directed to report for deportation, the

---

1. No appeal was taken from this October 1983 deportation order.

2. The original order of deportation had been entered in Dallas.

Gallanosas filed their second motion to reopen with a suspension application in Dallas (Dallas II). The following day, the Gallanosas filed their second action in district court requesting injunctive relief, this time in the United States District Court for the Eastern District of Virginia. It is this action that is the subject of the present appeal. The Gallanosas alleged jurisdiction based upon the fifth and fourteenth amendments to the United States Constitution, as well as 28 U.S.C. § 1331, 8 U.S.C. § 1329, and 5 U.S.C. §§ 701–706.[3] In response, the Virginia INS office agreed to stay the deportation until a preliminary injunction hearing in March 1985.

Before that hearing, however, the immigration judge in the Dallas II proceeding denied the Gallanosas' February 11, 1985, motion to reopen on the ground that they were statutorily ineligible for suspension of deportation pursuant to 8 U.S.C. § 1254(f). The Gallanosas appealed this Dallas II denial to the Board of Immigration Appeals and that appeal is still pending.

Two days after the Dallas II denial of the motion to reopen, the district court in the instant action held a hearing on the Gallanosas' application for preliminary injunctive relief. The court also heard the motion of the INS to dismiss for lack of jurisdiction and statutory ineligibility for the ultimate relief sought, suspension of deportation.

The district court in the instant action entered the requested injunction on April 5, 1985, conditioned upon the Gallanosas' filing of a suspension application. *Gallanosa v. United States*, No. 85–119–N (E.D.Va. April 5, 1985). The court found jurisdiction, despite the Gallanosas' failure to exhaust administrative remedies, to stay the proceedings "so as to allow plaintiffs to file for a suspension of deportation under 8

U.S.C. § 1254, which the Oklahoma federal district court has already authorized." The court noted that the "plaintiffs' failure to exhaust should not result in forfeiture of their previously granted right to file for suspension of deportation." The district court, however, went beyond the grant of a preliminary injunction and concluded that the Gallanosas had established a "prima facie case" warranting a reopening of suspension for deportation. Accordingly, the court ordered the INS to conduct a "thorough review" of the plaintiffs' application for suspension.[4]

The INS then moved for reconsideration of this order on the grounds that the court was mistaken in concluding that the Gallanosas had not applied for suspension of deportation. The government pointed to the Dallas II proceeding in which the immigration judge had denied the Gallanosas' motion to reopen with suspension application on March 11, 1985. Moreover, the government noted that appeal of that denial was then pending before the Board of Immigration Appeals. The government also renewed its contention concerning failure to exhaust administrative remedies.

While this motion for reconsideration was pending, on April 15, 1985, the Gallanosas filed their third motion to reopen and their second suspension application with an immigration judge in Dallas (Dallas III). That motion is still pending so far as we are aware.

On April 26, 1985, the district court in this case denied the government's motion for reconsideration of its injunctive order. In the order denying reconsideration, the court noted its awareness that the Gallanosas had, indeed, filed an application for suspension on February 12, 1985 (Dallas II). *Gallanosa v. United States*, No. 85–119–N (E.D.Va. April 26, 1985). The court

---

**3.** The Gallanosas cited three bases upon which the district court could grant the right to apply for suspension of deportation: (1) a "res judicata" claim that the Oklahoma suit required that the Gallanosas be permitted to apply for suspension; (2) a claim that Mr. Gallanosa became an exchange visitor before the 1981 amendments in the immigration laws; and (3) a claim that the

deportation would unconstitutionally deprive their citizen child, Kathryn, of necessary medical help available only in the United States.

**4.** The court failed to address the question of statutory ineligibility for suspension pursuant to 8 U.S.C. § 1254(f).

explained that "we did not hold plaintiffs' February 12 motion against them because it is evident that this application was hastily filed and, more importantly, cursorily denied by the INS without a thorough review." The court then reaffirmed its injunctive decree and ordered the INS "to go beyond their previous summary holding that plaintiffs are barred from relief by 8 U.S.C. § 1254(f)(2), and to develop a full record on the evidence of plaintiffs' case."

This appeal followed.

## II

■ We hold that the district court lacked jurisdiction because of the Gallanosas' failure to exhaust administrative remedies. The court did not identify a jurisdictional basis for its grant of injunctive relief as well as its directive ordering the INS to reopen suspension proceedings despite the government's direct challenge.

On the government's renewed challenge to district court jurisdiction on this appeal, we conclude that there was no jurisdictional basis for the order entered. We start of course with the fact that district courts, being courts of limited jurisdiction, are presumptively without jurisdiction until the contrary appears. *See Dracos v. Hellenic Lines*, 705 F.2d 1392 (4th Cir.1983). Directly supporting the government's challenge to jurisdiction here is § 106(c) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1105a(c), which specifically limits jurisdiction by its provision that an order of deportation "shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations...."

That critical limitation aside, there are further limitations on the jurisdiction of the district court to enter any order affecting the INS deportation order specifically at issue here. These appear when the district court's order is viewed in either of the two procedural postures that are possible: either as a review of an INS order denying a motion to reopen, or as review of an INS order denying a stay of deportation. Final agency denial of a motion to reopen in order to apply for suspension of deportation is a final order of deportation reviewable only by a court of appeals pursuant to 8 U.S.C. § 1105a. *Immigration and Naturalization Service v. Wang*, 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam). If the action before the district court were construed as an application for review of the denial of the Dallas II motion to reopen, the district court therefore clearly lacked jurisdiction. Moreover, the Dallas II order does not itself constitute a final administrative order, as the appeal of the immigration judge's determination is still pending before the Board of Immigration Appeals. Once the Board passes on that appeal, review jurisdiction over the motion to reopen lies exclusively with the proper court of appeals. 8 U.S.C. § 1105a(a).[5]

Second, if the instant action were construed as an application for review of the denial of a stay of deportation, the district court again lacked jurisdiction for failure to exhaust administrative remedies. The administrative denial of such a stay is normally reviewable by federal district courts following exhaustion of administrative remedies. *Kwok v. Immigration and Naturalization Service*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); *Oum v. Immigration and Naturalization Service*, 613 F.2d 51 (4th Cir.1980). The mere filing of a motion to reopen, however, does not automatically operate to stay the execution of outstanding deportation orders. Rather, the alien must seek a stay from the immigration judge or the Board of Immigration Appeals having jurisdiction over the motion to reopen. 8 C.F.R. § 242.22, § 3.6(b).[6]

---

**5.** The district court went so far as to conclude that the Gallanosas had established a prima facie case warranting reopening of suspension of deportation proceedings before the INS. If, as we hold, the court had no jurisdiction to review the agency denial of a motion to reopen, it obviously lacked jurisdiction to decide on the merits that the claimants were entitled to reopening.

**6.** 8 C.F.R. § 242.22 provides in pertinent part:

Furthermore, the decision to stay deportation rests in the discretion of the immigration judge or the Board of Immigration Appeals. 8 C.F.R: § 242.22, § 103.5, § 3.6(b).

The Gallanosas did not seek a stay of deportation in the Dallas I or II proceedings before the immigration judge. Though the Dallas I judge treated the improper motion to reopen as a request for an emergency stay of deportation, the stay was denied, and the Gallanosas failed to appeal that determination. The Gallanosas never sought a stay from the Dallas II immigration judge, nor have they requested such a stay from the Board of Immigration Appeals before whom the Dallas II appeal is pending. Accordingly, the Gallanosas have failed to exhaust their administrative remedies and, therefore, the district court lacked jurisdiction to review any denial of a stay of deportation.[7]

### III

■ Finally, we reject the Gallanosas' contention that the need for medical care of their citizen child, Kathryn, presents a substantial constitutional question sufficient to confer jurisdiction on the district court. The basis for the Gallanosas' constitutional claim is not clearly put. To the extent that their claim is that the deportation of the Gallanosa parents would effect a de facto deportation of the citizen child, Kathryn, thereby denying her constitutional rights as an American citizen, the claim lacks substance. The courts of appeals that have addressed this issue have uniformly held that deportation of the alien parents does not violate any constitutional rights of the citizen children. *See, e.g., Newton v.*

*Immigration and Naturalization Service,* 736 F.2d 336, 342–43 (6th Cir.1984); *Ayala-Flores v. Immigration and Naturalization Service,* 662 F.2d 444, 445–46 (6th Cir.1981) (per curiam); *Acosta v. Gaffney,* 558 F.2d 1153, 1157–58 (3d Cir.1977); *Gonzalez-Cuevas v. Immigration & Naturalization Service,* 515 F.2d 1222, 1224 (5th Cir.1975). We agree with the reasoning of these courts and, accordingly, conclude that the Gallanosas' deportation could violate no constitutional rights enjoyed by Kathryn by virtue of her United States citizenship.

To the extent that the Gallanosas' constitutional claim rests upon the assertion that Kathryn's medical care is obtainable only in the United States, we find it similarly insubstantial as a constitutional claim.

Whether "extreme hardship" warrants a suspension or stay of deportation is a matter committed by statute to the discretion of the immigration judge or the Board of Immigration Appeals in a proper administrative proceeding. Specifically, 8 U.S.C. § 1254(a)(1) provides that the Attorney General may, in his discretion, suspend deportation and adjust the status of an otherwise deportable alien who (1) has been physically present in this country for at least seven years; (2) is a person of good moral character; and (3) is "a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."

Any claim the Gallanosas' may wish to make of deprivation of Kathryn's necessary medical care should be raised in a

---

"The filing of a motion [to reopen] ... shall not serve to stay the execution of an outstanding decision; execution shall proceed unless the immigration judge who has jurisdiction over the motion specifically grants a stay of deportation. The immigration judge may stay deportation pending his/her determination of the motion...."

8 C.F.R. § 3.6(b) provides that no stay obtains from an appeal of a denial of a motion to reopen, except upon application to, and at the discretion of, the Board.

7. Moreover, the district court's standard of review when examining an administrative denial of a stay of deportation, is extremely narrow. Stays of deportation "are matters of grace and not of right and will not be set aside by the courts, absent a clear showing of abuse of discretion." *Bueno v. Immigration and Naturalization Service,* 578 F.Supp. 22, 24 (N.D.Ill.1983) (quoting *Kladis v. Immigration and Naturalization Service,* 343 F.2d 513, 515 (7th Cir.1965)).

suspension of deportation proceeding under the issue of "extreme hardship." *See Immigration & Naturalization Service v. Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam). Because no administrative authority has granted the motion to reopen, there has not yet been a hearing on the suspension of deportation. Consequently, there has been no administrative determination of the issue of extreme hardship. Once again, therefore, the Gallanosas have failed to exhaust their administrative remedies, and the district court could not properly base jurisdiction upon the claim of medical necessity advanced in the first instance before it.

Because we find the Virginia district court lacked jurisdiction, we vacate the entry of the preliminary injunction and remand with instructions to dismiss the action.

VACATED AND REMANDED WITH INSTRUCTIONS.