PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: CRESCENT CITY ESTATES,
LLC,

*Debtor.*

---

MR CRESCENT CITY, LLC;
McCRARY CRESCENT CITY, LLC;
MICHAEL C. McCRARY,

*Plaintiffs-Appellants,*

v.

DOUGLAS S. DRAPER; WILLIAM J.
MURPHY,

       No. 08-2367

*Parties-in-Interest-Appellees,*

and

GIANNASCA CRESCENT CITY, LLC;
EDWARD V. GIANNASCA, II;
CRESCENT CITY ESTATES, LLC;
STUART C. NEIL FISHER; TJ
BISCAYNE HOLDINGS, LLC; MARKET
STREET PROPERTIES PALM BEACH,
LLC; TAMARA J. FISHER,

*Defendants.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, Senior District Judge.
(1:08-cv-02640-MJG; AP-07-00662)

Argued: October 29, 2009

Decided: December 7, 2009

Before WILKINSON, MICHAEL, and AGEE,
Circuit Judges.

---

Affirmed by published opinion. Judge Wilkinson wrote the
opinion, in which Judge Michael and Judge Agee joined.

---

**COUNSEL**

**ARGUED**: Mark Jerome Friedman, DLA PIPER US LLP,
Baltimore, Maryland, for Appellants. W. Neil Eggleston,
DEBEVOISE & PLIMPTON, LLP, Washington, D.C., for
Appellees. **ON BRIEF:** David B. Misler, DLA PIPER US
LLP, Baltimore, Maryland; William H. Murphy, Jr., Kenneth
B. Frank, WILLIAM H. MURPHY, JR. & ASSOCIATES,
PA, Baltimore, Maryland, for Appellants. Alan M. Grochal,
Kristin P. Herber, TYDINGS & ROSENBERG, LLP, Balti-
more, Maryland, for Appellee Douglas S. Draper.

---

**OPINION**

WILKINSON, Circuit Judge:

This case presents a purely legal question: whether 28
U.S.C. § 1447(c) permits the imposition of legal fees on an
attorney who erroneously removes a case from state to federal
court. The district court held that it does not. We affirm.

I.

This case began in Maryland state court in February 2007.
Several entities with an ownership stake in Crescent City

Estates, LLC (collectively, appellants) brought a derivative suit against defendants Crescent City Estates, LLC and its managers, alleging that the managers had not accounted properly for approximately $12 to 15 million in insurance proceeds. In connection with the litigation, defendants retained as legal counsel the appellees in this case: attorneys Douglas S. Draper and William J. Murphy.

About six months after the suit's commencement, defendants removed the state court action to the United States Bankruptcy Court for the District Court of Maryland. As lawyers for the defendants, appellees signed the notice of removal. Shortly thereafter, appellants filed a motion to remand the case back to state court. In doing so, appellants sought attorneys' fees for improper removal under 28 U.S.C. § 1447(c), which allows a court to "require payment of . . . attorney fees . . . incurred as a result of removal." Notably, appellants sought attorneys' fees both from defendants and from their attorneys, the appellees.

The attorneys argued that they could not be liable, claiming that § 1447(c) authorized the imposition of attorneys' fees only against removing parties and not against removing attorneys. The federal bankruptcy court, however, disagreed. It held that, as a matter of law, § 1447(c) applied both to parties and to attorneys. Appellees sought immediate review, and on interlocutory appeal, the United States District Court for the District of Maryland reversed. *Crescent City Estates, LLC v. MR Crescent City, LLC* (In re *Crescent City*), 2008 WL 5216243 (D. Md. Dec. 9, 2008). After examining statutory text, legislative history, and relevant case law, the district court concluded that "§ 1447(c) . . . [gave] authority to impose liability for costs (including legal fees) upon parties but not attorneys." *Id.* at *4. Appellants now ask us to reverse the district court's decision.

## II.

The statute, 28 U.S.C. § 1447(c), states in relevant part: "An order remanding [an erroneously removed] case may

require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." The statute, however, does not state expressly *who* may be required to make such payment. Appellants contend that both removing parties and their lawyers are liable, while appellees assert that only removing parties are liable.

As of yet, no circuit court has confronted this issue, and the district courts that have addressed it are badly divided. *Compare Creek Ventures, LLC v. World Parts, LLC*, 2004 WL 1166642, at *4 (W.D.N.Y. Apr. 14, 2004) (holding that § 1447(c) does not apply to counsel); *Marketplace Illustrated Inc. v. Intrex Travel, Inc.*, 1993 WL 405494, at *3 (W.D.N.Y. Sept. 30, 1993) (same), *with Peraza v. Mazak*, 2008 WL 186613, at *3 (M.D. Fla. Jan. 18, 2008) (holding that § 1447(c) applies to counsel); *Saxon v. Thomas*, 2007 WL 1115239, at *5-6 (W.D. La. Apr. 12, 2007) (same), *aff'd by* 2007 WL 1974914 (W.D. La. June 29, 2007); *Game Time Laser Tag Adventure, LLC v. MillsServices Corp.*, 2006 WL 2422593, at *1 (S.D. Ohio Aug. 22, 2006) (same); *Wisconsin v. Missionaries to the Preborn*, 798 F. Supp. 542, 543-44 (E.D. Wis. 1992) (same); *Polanco v. 21 Arden Realty Corp.*, 121 B.R. 425, 428 (S.D.N.Y. 1990) (same).

Appellants argue that because § 1447(c) does not explicitly prohibit a fee award against counsel, it thereby permits it. Appellants, however, have the presumption reversed. The proper presumption is that when a fee-shifting statute does not explicitly permit a fee award against counsel, it prohibits it. In short, silence does not equal consent. Because we find that the presumption is not overcome in this case, we accordingly hold that § 1447(c) does not apply to counsel.

### III.

The presumption that fee-shifting statutes apply only to parties unless they expressly state otherwise is consistent with the American Rule. Under the American Rule, "the prevailing

litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). In other words, the American Rule creates a presumption that parties bear their own legal costs, win or lose. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994). The American Rule's presumption can be further subdivided into two distinct underlying premises: first, that parties bear *their own* legal fees and second, that *parties* bear legal fees.

Congress is, of course, free to alter either or both of these premises through legislation. *See id.* However, departures from the American Rule require "explicit statutory authority." *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Servs.*, 532 U.S. 598, 602 (2001). In other words, if Congress wishes to overcome either premise underlying the American Rule, it must express its intent to do so clearly and directly. This is because the American Rule is a longstanding legal principle, *see Key Tronic Corp. v. United States*, 511 U.S. 809, 815 (1994), and one "deeply rooted" in our nation's common law tradition, with origins dating back perhaps as early as 1796. *Alyeska Pipeline*, 421 U.S. at 271, 249-50 (citing *Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306, 1 L.Ed. 613 (1796)). And "[i]n order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." *United States v. Texas*, 507 U.S. 529, 534 (1993).

Absent explicit authorization from Congress, it is our duty to keep the American Rule intact. "Congress ha[s] not 'extended any roving authority to the Judiciary to allow counsel fees . . . whenever the courts might deem them warranted.'" *Buckhannon*, 532 U.S. at 610 (citing *Alyeska Pipeline*, 421 U.S. at 260). Because fee-shifting statutes are "in derogation of the common law," courts are obligated to construe them strictly, *Rowe v. U.S. Fid. & Guar. Co.*, 375 F.2d 215, 219 (4th Cir. 1967), employing a "presumption favoring the retention of long-established and familiar princi-

ples, except when a statutory purpose to the contrary is evident," *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952). This means that unless there is at least some indication that Congress intended *attorneys* to pay under § 1447(c), we will apply the American Rule's presumption that *parties* pay.

In this case, it is undisputed that Congress intended § 1447(c) to modify the American Rule in part. Section 1447(c) is, after all, a fee-shifting statute. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 137-38 (2005). Thus, the parties agree that § 1447(c) was meant to overcome the first premise underlying the American Rule (that parties bear *their own* legal fees), thereby enabling courts to shift fees from the prevailing party (here, the party successfully obtaining remand) to the losing party (here, the party erroneously attempting removal). Appellees argue that § 1447(c) stops there, leaving undisturbed the second premise of the American Rule (that *parties* bear legal fees). That is, whether prevailing or losing, it is nonetheless parties — not attorneys — who bear attorneys' fees. Appellants, on the other hand, would have us depart from the American Rule more radically, by shifting fees not merely from a prevailing litigant to a losing litigant, but from a prevailing litigant to a losing attorney. Under this view, § 1447(c) reverses both parts of the American Rule's presumption, shifting fees and introducing a new payer.

We see no justification for the dramatic deviation from the American Rule advocated by appellants. Neither § 1447(c)'s text nor its legislative history is sufficient to overcome the American Rule's presumption that parties rather than attorneys are liable for attorneys' fees. *First*, the text of § 1447(c) makes no explicit mention of counsel. And because "Congress legislates against the strong background of the American Rule," *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994), the fact that Congress did not explicitly exclude counsel from the reach of § 1447(c) is no indication of congressional intent to include counsel. Congress knows that in order to demonstrate

an "inten[t] to set aside th[e] longstanding American [R]ule," "[m]ere generalized commands . . . will not suffice to authorize . . . fees." *Key Tronic*, 511 U.S. at 815 (citations and internal quotations omitted). Indeed, Congress has shown that when it wants to make attorneys liable under fee-shifting statutes, it will do so expressly. For instance, in 28 U.S.C. § 1927, Congress unambiguously empowered courts to require "[a]ny attorney . . . who so multiples the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The omission of comparable express authorization in § 1447(c) thus "strongly suggest[s] a deliberate decision not to authorize such awards." *See Key Tronic*, 511 U.S. at 818-19.

Although the statutory text does not explicitly forbid fee awards against counsel, it does so implicitly. The statute speaks, by implication, only to parties. Section 1447(c) allows a court to impose a fee award in "[a]n order remanding the case," which, as the district court noted, "would normally, if not inevitably, be contemplated as one that pertains to parties and not counsel." *Crescent City*, 2008 WL 5216243, at *4. The most natural reading of § 1447(c) is that it applies solely to litigants, who have a genuine stake in whether or not the case is remanded — and not to attorneys, who may not even remain involved in the case post-remand.

In fact, the Supreme Court has repeatedly emphasized the "crucial connection" between liability on the merits and liability for attorneys' fees under fee-shifting statutes. *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 762 (1989). For example, in *Kentucky v. Graham*, 473 U.S. 159, 164 (1985), the Court observed that although "[s]ection 1988 does not in so many words define the parties who must bear these costs [of attorneys' fees]," it was "[n]onetheless . . . clear that the logical place to look for recovery of fees is to the losing party — the party legally responsible for relief on the merits." Simply put, "fee liability runs with merits liability." *Id.* at

168; *see also id.* at 165 ("[L]iability on the merits and responsibility for fees go hand in hand."). This court has likewise recognized that one's "status as a nonparty" generally provides protection from fee liability. *See Johnson v. City of Aiken*, 278 F.3d 333, 338 (4th Cir. 2002). Thus, because attorneys are nonparties not liable on the merits, they are generally outside the ambit of fee-shifting statutes.

*Second*, our conclusion is confirmed by the legislative history. While such history cannot be used to override statutory text, it can serve as a useful supplement. Like the statute's text, the legislative history here makes no express mention of attorney liability. It defies common sense to think that Congress wished to expand fee liability to encompass lawyers but failed to say anything at all about that wish, at any point, during the statute's consideration. "Such a bold departure from traditional practice would have surely drawn more explicit statutory language and legislative comment." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).

To the contrary, the legislative history suggests that Congress anticipated that § 1447(c) would apply exclusively to litigants. Section 1447(c) was enacted in 1988 to succeed a former statutory provision, which subjected defendants to a "bond requirement." *See* H.R. 4807, 100th Cong. (1988); 28 U.S.C. § 1446(d) (repealed). Under this bond requirement, defendants had to post a bond, prior to removal, in order to secure payment for costs incurred if removal turned out to be improper. *Id.* Significantly, this bond requirement *explicitly* applied only to parties, limiting liability to "defendant or defendants." *Id.*

The legislative history states that § 1447(c) was designed merely to "replace the bond provision," H.R. Rep. No. 100-889, at 72 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 5982, 6033, thus directly substituting a *party*'s obligation to pay costs ex ante with a *party*'s obligation to pay costs ex post. If Congress had intended § 1447(c) not only to change the

timing of payments but also to expand the categories of individuals potentially liable for payments, that expansion probably would have generated at least minimal legislative debate. Instead, § 1447(c) was enacted as part of a "noncontroversial," omnibus bill. *See* 134 Cong. Rec. H7443-02 (Sept. 13, 1988) (statement of Rep. Moorhead). In conclusion, nothing demonstrates a congressional intent to overcome the American Rule in order to make attorneys liable for an adversary's attorneys' fees.

IV.

Moreover, federal case law corroborates our holding. Indeed, the Supreme Court and other circuits have interpreted fee-shifting statutes with text materially indistinguishable from that of § 1447(c) to be inapplicable to counsel. These cases firmly support the presumption that fee-shifting statutes shift fees only to parties unless they expressly state otherwise.

For example, in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 758, n.5 (1980), the Supreme Court examined fee-shifting provisions in 42 U.S.C. §§ 1988 and 2000e-5(k), which allowed successful plaintiffs "a reasonable attorney's fee as part of the costs," without specifying who was responsible for that "reasonable attorney's fee." The Court declined to make lawyers responsible for fees under those sections, noting that "[n]either § 1988 nor § 2000e-5(k) makes any mention of attorney liability for costs and fees." *Id.* at 761. This case fairly stands for the more general proposition that, presumptively, when a fee-shifting statute is silent about who pays attorneys' fees, parties — not attorneys — are accountable.

The presumption is widely held. As the Second Circuit summarized, "When a fee-shifting statute that authorizes the courts to award attorneys' fees . . . does not mention an award against the losing party's attorney, the appropriate inference is that an award against attorneys is not authorized." *Healey*

*v. Chelsea Res., Ltd.*, 947 F.2d 611, 624 (2d Cir. 1991). Other circuits have likewise held that fee-shifting statutes presumptively apply only to litigants. And these courts have so held in a wide array of contexts, interpreting fee-shifting provisions under civil rights statutes, under the Securities Act, under the False Claims Act, under the Federal Rules of Civil Procedure, and under the Copyright Act. *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1238 (11th Cir. 2007) (42 U.S.C. § 2000e-5(k)); *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1222 (10th Cir. 2006) (42 U.S.C. § 1988); *Foster v. Mydas Assocs., Inc.*, 943 F.2d 139, 142 (1st Cir. 1991) (42 U.S.C. § 1988); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 276-77 (3d Cir. 1990) (42 U.S.C. § 1988); *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 624 (2d Cir. 1991) (§ 11(e) of the Securities Act, 15 U.S.C. § 77k(e)); *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005-06 (9th Cir. 2002) (False Claims Act, 31 U.S.C. § 3730(d)(4)); *Heckethorn v. Sunan Corp.*, 992 F.2d 240, 242 (9th Cir. 1993) (Rule 41(a)(2)); *Amlong & Amolong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1238 (11th Cir. 2007) (Rule 26(g)); *Crescent Publ'g Group, Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 150 (2d Cir. 2001) (Copyright Act, 17 U.S.C. § 505).

These decisions interpret fee-shifting statutes with language remarkably similar to the language of § 1447(c). Like § 1447(c), the provisions in these cases vest courts with discretion to award attorneys' fees but do not expressly state who must pay those fees. Accordingly, we choose to interpret § 1447(c) similarly. As the Supreme Court has explained, "fee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike." *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 758, n.2 (1989); *see also Ruckelshaus v. Sierra Club*, 463 U.S. 680, 691 (1983) ("[S]imilar attorney's fees provisions should be interpreted *pari passu*."); *Northcross v. Bd. of Educ. of Memphis City Schools*, 412 U.S. 427, 428 (1973) (per curiam) ("[S]imilarity of language . . . is, of course, a strong indication that . . . two statutes should be interpreted *pari passu*."). In doing so, we

"avoid . . . inconsistency in . . . fee award decisions." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 537 (1994) (Thomas, J., concurring) (citations omitted).*

## V.

Finally, the consequences of departing from sound statutory

---

\*Appellants argue that we must instead interpret § 1447(c) consistently with 28 U.S.C. § 1912 and Federal Rule of Appellate Procedure 38. Those provisions allow courts to award "just damages" and "single or double costs" resulting from frivolous appeals but, like § 1447(c), do not expressly articulate who must bear liability. Despite the provisions' failure to expressly include counsel, some courts have nevertheless indicated that attorneys may be liable under them. *See Oum v. INS*, 613 F.2d 51, 53 (4th Cir. 1980); *Thomas v. Digital Equip. Corp.*, 880 F.2d 1486, 1490-91 (1st Cir. 1989); *Am. Sec. Vanlines, Inc. v. Gallagher*, 782 F.2d 1056, 1057 (D.C. Cir. 1986) (per curiam); *Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406-07 & n.8 (9th Cir. 1985); *Hughes v. Hoffman*, 750 F.2d 53, 55 (8th Cir. 1984) (per curiam); *Bankers Trust Co. v. Publicker Indus., Inc.*, 641 F.2d 1361, 1368 (2d Cir. 1981); *LeLaurin v. Frost Nat'l Bank*, 391 F.2d 687, 692 n.4 (5th Cir. 1968) (§ 1912 only).

For a number of reasons, however, we believe that these cases do not call into question the general presumption against attorney liability under fee-shifting statutes. First, not all of the cases squarely decided the issue. For example, this Court, in *Oum v. INS*, merely suggested that it might be willing to apply § 1912 and Rule 38 to counsel but did not have to address the issue since the government was not seeking fees from counsel. 618 F.2d 51, 53 (4th Cir. 1980). Second, several of the cases relied in part on an additional statute, 28 U.S.C. § 1927, which *does* expressly permit sanctions against attorneys. *See Gallagher*, 782 F.2d at 1057; *Hughes*, 750 F.2d at 55; *Bankers Trust*, 641 F.2d at 1368. Finally, and most significantly, the language used in § 1912 and Rule 38 is strikingly less similar to § 1447(c) than the language in the statutes discussed above, which courts found not to encompass counsel. Section 1912 and Rule 38, unlike § 1447(c), are not true fee-shifting statutes at all, referring only to "just damages" rather than "attorney fees." Therefore, in interpreting "similar fee provisions . . . alike," *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 537 (1994) (Thomas, J., concurring) (citations omitted), we are obligated to interpret § 1447(c) consistently with those similarly worded statutes that have consistently been found inapplicable to attorneys.

construction would be severe. For one thing, subjecting counsel to § 1447(c) liability for improvident removals would only generate more collateral litigation. "A request for attorney's fees should not result in a second major litigation, and . . . accordingly [courts should] avoid[ ] an interpretation of the fee-shifting statutes that would . . . spawn[ ] a second litigation of significant dimension." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Servs.*, 532 U.S. 598, 609 (2001) (citations and internal quotations omitted). In this case, because fee requests are made at the time of a remand order, applying § 1447(c) to counsel would build an extra layer of litigiousness into the middle of a case. Since § 1447(c) provides no "formula for 'ready administrability,'" *id.* at 610, a litigious period would be required to establish the proper standards for attorney, as opposed to party, liability. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (holding that a party may be liable under § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal"). Courts would also be forced to decide, without legislative guidance, when an attorney should be held solely liable, when an attorney should be held jointly and severally liable with a client, or whether fees should be apportioned between lawyer and client (or lawyers and clients, as the case may be) based on some yet unknown formula.

Plus, § 1447(c)'s application to lawyers could promote the provision's use as a disruptive litigation tactic, employed to pit lawyer and client against each other, thereby causing further friction and delay. Forcing an attorney to defend his actions in the midst of litigation might create a conflict of interest or rift in the lawyer-client relationship, possibly forcing the lawyer to withdraw, *see Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 623 (2d Cir. 1991), or require the attorney to reveal privileged and confidential information relating to the case.

Additionally, exposing lawyers to personal monetary liability whenever they remove a case risks chilling the right of

removal. Removal is a federal right, which Congress has long provided and which courts have long protected. *See Martin*, 546 U.S. at 137 (citing 28 U.S.C. § 1441). Making lawyers potentially liable for every erroneous removal would likely result in fewer removals altogether, including many meritorious ones. In close cases, lawyers may err on the side of caution, "exercis[ing] this right only in cases where the right to remove was obvious." *Id.* at 140. And "there is no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases." *Id.*

Furthermore, holding counsel responsible under § 1447(c) could begin to transform what it means to practice law. A lawyer should not be required to risk personal liability merely for acting in a representational capacity or for seeking to place a client in a more favorable litigation posture. Generally, an attorney is held liable in a representational capacity only when he engages in misconduct — not for legal judgments. *See DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999). The standard for imposing sanctions on legal judgment is high, usually requiring vexatiousness, malfeasance, bad faith, or the like. *See, e.g.*, 28 U.S.C. § 1927; Fed. R. Civ. P. 11.

Thus, holding lawyers accountable under § 1447(c) would go too far. Erroneous removal need not entail misconduct. Questions of removal are often complicated, generating the most extensive commentary in the most learned of treatises. *See, e.g.*, 14B & 14C Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure, §§ 3721-40 (4th ed. & supp. 2009); 29A Federal Procedure, Lawyer's Edition §§ 69:1 to 69:200 (2009). Erroneous removal might very well be the result of an honest but forgivable mistake of legal judgment or perhaps the product of a lawyer's operating at the behest of a client's desires and demands.

To be sure, no one wishes to encourage improper removals. Wrongful or erroneous removals impose their own litigious

burdens on the system. As the Supreme Court has noted, "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). But fee-shifting by itself operates as a deterrent on such practices. To go further and expose attorneys to personal liability risks, as we have noted, equating professional judgment calls with misconduct and chilling legitimate exercises of the removal right.

There are, however, cases where removal is not just erroneous but egregiously so. Where an attorney's decision to remove *is* particularly blameworthy, courts do not need § 1447(c) to impose sanctions. For example, courts have at their disposal Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and their inherent powers, all of which may permit awards of attorneys' fees against attorneys whose actions compromise standards of professional integrity and competence. "The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980) (citations omitted).

We are asked here, however, to impose liability on lawyers solely on the basis of § 1447(c). We are asked further to import into law a species of liability that Congress has in no way seen fit to adopt. Lacking explicit direction from the legislative branch, we refuse to read § 1447(c) to authorize the imposition of legal fees upon attorneys for erroneous removals.

## VI.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.