**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-1191**

MILO SHAMMAS,

    Plaintiff - Appellant,

  v.

MARGARET A. FOCARINO, Commissioner of Patents,

    Defendant - Appellee,

  and

DAVID KAPPOS, Director of the United States Patent and Trademark Office; TERESA STANEK REA, Acting Director of the United States Patent and Trademark Office,

    Defendants.

-----------------------------------

INTERNATIONAL TRADEMARK ASSOCIATION,

    Amicus Supporting Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, Senior District Judge. (1:12-cv-01462-TSE-TCB)

Argued: December 10, 2014    Decided: April 23, 2015

Before WILKINSON, NIEMEYER, and KING, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the majority opinion, in which Judge Wilkinson joined. Judge King wrote a dissenting opinion.

---

**ARGUED:** Aaron M. Panner, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C., Washington, D.C., for Appellant. Jaynie Randall Lilley, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** William C. Steffin, Armin Azod, STEFFIN LELKES AZOD LLP, Century City, California; Wendy McGuire Coats, MCGUIRE COATS LLP, Lafayette, California; W. Joss Nichols, KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C., Washington, D.C.; John N. Jennison, JENNISON & SHULTZ, P.C., Arlington, Virginia, for Appellant. Nathan K. Kelley, Solicitor, Thomas W. Krause, Deputy Solicitor, Christina J. Hieber, Associate Solicitor, Thomas L. Casagrande, Associate Solicitor, UNITED STATES PATENT AND TRADEMARK OFFICE, Alexandria, Virginia; Stuart F. Delery, Assistant Attorney General, Mark R. Freeman, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Dana J. Boente, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. Anthony J. Dreyer, Jordan A. Feirman, Katelyn N. Andrews, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, New York, New York; Mark N. Mutterperl, David J. Ball, Jessica S. Parise, BRACEWELL & GIULIANI LLP, New York, New York, for Amicus Curiae.

---

NIEMEYER, Circuit Judge:

The Lanham Act, 15 U.S.C. §§ 1051-1141n, provides that a dissatisfied trademark applicant may seek review of an adverse ruling on his trademark application either by appealing the ruling to the Court of Appeals for the Federal Circuit, id. § 1071(a)(1), or by commencing a de novo action in a federal district court, id. § 1071(b)(1). If he elects to proceed in a district court and no adverse party opposed his application before the Patent and Trademark Office ("PTO"), the applicant must name the Director of the PTO as a defendant and pay "all the expenses of the proceeding," whether he succeeds in the action or not, unless the expenses are unreasonable. Id. § 1071(b)(3) (emphasis added).

In this case, Milo Shammas, a dissatisfied applicant in an ex parte trademark proceeding, elected to commence a de novo action in the district court. At the end of the proceeding, the Director of the PTO sought "all the expenses of the proceeding" from Shammas, including salary expenses of the PTO attorneys and a paralegal who were required to defend the Director. The district court granted the Director's request and ordered Shammas to pay the PTO a total of $36,320.49 in expenses.

On appeal, Shammas argues that the district court erred in "shifting" the PTO's attorneys fees to him, contrary to the "American Rule" under which each party bears his own attorneys

3

fees, because the governing statute does not expressly provide for the shifting of attorneys fees.

We reject this argument and affirm, concluding that the imposition of all expenses on a plaintiff in an ex parte proceeding, <u>regardless of whether he wins or loses</u>, does not constitute fee-shifting that implicates the American Rule but rather an unconditional compensatory charge imposed on a dissatisfied applicant who elects to engage the PTO in a district court proceeding. And we conclude that this compensatory charge encompasses the PTO's salary expenses for the attorneys and paralegals who represent the Director.

I

In June 2009, Shammas filed a federal trademark application for the mark "PROBIOTIC" for use in connection with fertilizer products manufactured by his company, Dr. Earth, Inc. In an ex parte proceeding, a trademark examining attorney for the PTO denied Shammas' application on the ground that the term was generic and descriptive. The Trademark Trial and Appeal Board affirmed.

Rather than appeal the adverse ruling to the Federal Circuit, as allowed by 15 U.S.C. § 1071(a)(1), Shammas elected to commence this de novo civil action against the PTO in the district court, pursuant to § 1071(b)(1). The district court

4

granted the PTO's motion for summary judgment by order dated October 15, 2013, holding that Shammas had failed to cast doubt on the finding that "PROBIOTIC" was a generic term.

At the conclusion of the proceeding, the PTO filed a motion, pursuant to § 1071(b)(3), for reimbursement of $36,320.49 in expenses that it had incurred in the proceeding, including the prorated salaries of two attorneys, in the amount of $32,836.27, and one paralegal, in the amount of $3,090.32. The PTO calculated these sums by dividing the employees' annual salaries by 2,000 hours and multiplying the results by the number of hours expended by the employees in defending the action, a total of 518 hours in this case. The PTO also claimed $393.90 for photocopying expenses.

Shammas opposed the motion, arguing that the PTO was in essence seeking attorneys fees and that § 1071(b)(3) did not, in authorizing the recovery of all expenses of the proceeding, explicitly provide for the shifting of attorneys fees as, he argued, would be required to overcome the American Rule.

Following a hearing, the district court granted the PTO's motion in its entirety. It reasoned:

> [T]he plain meaning of the term "expenses," by itself, would clearly seem to include attorney's fees. But if any doubt remains about that inclusion, it is removed by Congress's addition of the word "all" to clarify the breadth of the term "expenses." When the word "expenses" is prefaced with the word "all," it is pellucidly clear Congress intended that the plaintiff

5

> in such an action pay for all the resources expended by the PTO during the litigation, including attorney's fees.

Shammas v. Focarino, 990 F. Supp. 2d 587, 591-92 (E.D. Va. 2014).

From the district court's order, dated January 3, 2014, Shammas filed this appeal, challenging the district court's authority to award attorneys fees and paralegals fees under § 1071(b)(3).

II

Section 1071(b)(3) provides in relevant part, "In any case where there is no adverse party, . . . all the expenses of the proceeding shall be paid by the party bringing the case, whether the final decision is in favor of such party or not."

While Shammas acknowledges that "expenses" is a sufficiently broad term that, "in ordinary parlance," includes attorneys fees, he argues that in the context of the American Rule -- i.e., that "the prevailing party may not recover attorneys' fees as costs or otherwise," Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 245 (1975) -- the statute is not sufficiently clear to reverse the presumption created by that Rule. He argues that "a district court may not read a federal statute to authorize attorney-fee-shifting unless the

statute makes Congress's intention clear by <u>expressly</u> referring to attorney's fees."  (Emphasis added).

We agree with Shammas that, in ordinary parlance, "expenses" is sufficiently broad to include attorneys fees and paralegals fees.  See <u>American Heritage Dictionary</u> 624 (5th ed. 2011) (defining expense as "[s]omething spent to attain a goal or accomplish a purpose," such as "an expense of time and energy on [a] project"); <u>Black's Law Dictionary</u> 698 (10th ed. 2014) (defining expense as "[a]n expenditure of money, time, labor, or resources to accomplish a result"); <u>accord</u> <u>U.S. ex rel. Smith v. Gilbert Realty Co.</u>, 34 F. Supp. 2d 527, 529-30 (E.D. Mich. 1998) (noting that "a legal fee would certainly seem to be" an "expense[] which a person incurs in bringing an action" under the plain meaning of that phrase).  Moreover, in this statute, Congress modified the term "expenses" with the term "all," clearly indicating that the common meaning of the term "expenses" should not be limited.  And even though the PTO's attorneys in this case were salaried, we conclude that the PTO nonetheless incurred expenses when its attorneys were required to defend the Director in the district court proceedings, because their engagement diverted the PTO's resources from other endeavors.  See <u>Wisconsin v. Hotline Indus., Inc.</u>, 236 F.3d 363, 365 (7th Cir. 2000) ("[S]alaried government lawyers . . . <u>do</u>

7

incur expenses if the time and resources they devote to one case are not available for other work" (emphasis added)).

Shammas' argument in this case depends on the assumption that if § 1071(b)(3) were to be construed to include attorneys fees, it would constitute a fee-shifting statute that would need to refer explicitly to attorneys fees in order to overcome the presumption of the American Rule. This assumption, however, is misplaced under the circumstances of this case.

To be sure, where the American Rule applies, Congress may displace it only by expressing its intent to do so "clearly and directly." In re Crescent City Estates, 588 F.3d 822, 855 (4th Cir. 2009). But the American Rule provides only that "the prevailing party may not recover attorneys' fees" from the losing party. Alyeska Pipeline, 421 U.S. at 245 (emphasis added); see also, e.g., Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 602 (2001) ("[T]he prevailing party is not entitled to collect [attorneys fees] from the loser"); E. Associated Coal Corp. v. Fed. Mine Safety & Health Review Comm'n, 813 F.2d 639, 643 (4th Cir. 1987) (similar). The requirement that Congress speak with heightened clarity to overcome the presumption of the American Rule thus applies only where the award of attorneys fees turns on whether a party seeking fees has prevailed to at least some degree. As the Supreme Court has explained,

8

> [W]hen Congress has chosen to depart from the American Rule by statute, virtually every one of the more than 150 existing federal fee-shifting provisions <u>predicates fee awards on some success by the claimant;</u> while these statutes contain varying standards as to the precise degree of success necessary for an award of fees[,] . . . <u>the consistent rule is that complete failure will not justify shifting fees</u> . . . .

<u>Ruckelshaus v. Sierra Club</u>, 463 U.S. 680, 684 (1983) (emphasis added); <u>see also</u> <u>W. Va. Highlands Conservancy, Inc. v. Norton</u>, 343 F.3d 239, 244 (4th Cir. 2003) (requiring some degree of success, even though the statute authorized courts to award fees whenever they deemed it appropriate). Thus, a statute that mandates the payment of attorneys fees without regard to a party's success is not a fee-shifting statute that operates against the backdrop of the American Rule.

With that understanding of the American Rule, it becomes clear that § 1071(b)(3) is not a fee-shifting statute that purports to rebut the presumption of the Rule. Rather than imposing expenses based on whether the PTO prevails, § 1071(b)(3) imposes the expenses of the proceeding on the ex parte plaintiff, "<u>whether the final decision is in favor of such party or not</u>." (Emphasis added). Thus, even if Shammas had prevailed in the district court, he still would have had to pay all of the PTO's expenses. Because the PTO is entitled to recover its expenses even when it completely fails, § 1071(b)(3) need not be interpreted against the backdrop of the American

Rule. Therefore, even assuming that a statute must explicitly provide for the shifting of attorneys fees to overcome the presumption of the American Rule, that requirement is not applicable here.

Since § 1071(b)(3) does not implicate the presumption of the American Rule, Shammas' argument that the term "expenses" must explicitly include attorneys fees fails, and we are therefore left with giving the phrase "all the expenses of the proceeding" its ordinary meaning without regard to the American Rule. Construing the plain language of § 1071(b)(3), we conclude that an ex parte litigant who elects to initiate a de novo proceeding in the district court must pay all reasonable expenses of the proceeding, including attorneys fees, whether he wins or loses.

As an alternative argument, Shammas contends that "expenses of the proceeding," taken in context, should "most naturally [be] read as synonymous with 'costs of the proceeding' -- that is, taxable costs" -- and that the term "taxable costs" is a legal term of art that does not include attorneys fees. He provides no explanation, however, for why we should replace the statutory words "all the expenses" with the words "taxable costs."

Moreover, we rejected this argument in the context of nearly identical statutory language requiring a dissatisfied

10

patent applicant who opts to challenge the denial of his patent application in an ex parte proceeding in a district court to pay "all the expenses of the proceeding." See Robertson v. Cooper, 46 F.2d 766, 769 (4th Cir. 1931) (permitting recovery of a government attorney's expenses associated with attending a deposition). In Robertson, we reversed the district court's holding that "the word 'expenses' in the statute practically meant 'costs,'" concluding instead that "[t]he evident intention of Congress in the use of the word 'expenses' was to include more than that which is ordinarily included in the word 'costs.'" Id.; see also Taniguchi v. Kan Pac. Saipan, Ltd., 132 S. Ct. 1997, 2006 (2012) ("Taxable costs are limited to relatively minor, incidental expenses . . . . Taxable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators."); Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 297 (2006) ("The use of ['costs'], rather than a term such as 'expenses,' strongly suggests that [20 U.S.C.] § 1415(i)(3)(B) was not meant to be an open-ended provision that makes participating States liable for all expenses incurred").

Apart from the linguistic distinction between expenses and costs, the use of both terms in § 1071(b)(3) also suggests that they were not intended to be read synonymously. In the sentence immediately following the "all the expenses" language,

11

§ 1071(b)(3) provides that the administrative record "shall be admitted on motion of any party, upon such terms and conditions as to <u>costs</u>, <u>expenses</u>, and the further cross-examination of the witnesses as the court imposes." (Emphasis added). In light of the "'cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that . . . no clause, sentence, or word shall be superfluous,'" <u>TRW Inc. v. Andrews</u>, 534 U.S. 19, 31 (2001) (quoting <u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001)), and the "normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning," <u>Sullivan v. Stroop</u>, 496 U.S. 478, 484 (1990) (quoting <u>Sorenson v. Sec'y of Treasury</u>, 475 U.S. 851, 860 (1986)) (internal quotation marks omitted), we conclude that Congress did not intend for "expenses" to be interchangeable and coextensive with "costs."

III

Our reading that § 1071(b)(3) imposes a unilateral, compensatory fee, including attorneys fees, on every ex parte applicant who elects to engage the resources of the PTO when pursuing a de novo action in the district court, whether the applicant wins or loses, is confirmed by the Lanham Act's structure and legislative history.

12

A

Under the statutory scheme, a trademark applicant may appeal a trademark examiner's final decision denying registration of a mark to the Trademark Trial and Appeal Board. See 15 U.S.C. § 1070. Thereafter, a dissatisfied applicant is given two choices for proceeding further. He can appeal the decision directly to the Federal Circuit, pursuant to § 1071(a)(1), or he can commence a de novo civil action in a federal district court, pursuant to § 1071(b)(1). Should he choose the former, the appeal is taken "on the record" before the PTO, id. § 1071(a)(4), and the court will uphold the PTO's factual findings unless they are "unsupported by substantial evidence," see, e.g., Recot, Inc. v. Becton, 214 F.3d 1322, 1327 (Fed. Cir. 2000). Should he choose instead to commence an action in a district court, not only is the record of the PTO admissible into evidence on the motion of either party, but the parties may also conduct discovery and submit further testimony and other new evidence. § 1071(b)(3); Swatch AG v. Beehive Wholesale, LLC, 739 F.3d 150, 155 (4th Cir. 2014). The district court reviews all the evidence de novo and acts as the trier of fact. See Swatch, 739 F.3d at 155. Moreover, collateral issues, such as claims for infringement and unfair competition, may be presented and decided as authorized by the Federal Rules of Civil Procedure. Id.

De novo civil actions under § 1071(b)(1) thus contemplate a more fulsome and expensive procedure. Since the statute requires an ex parte applicant to name the PTO as a party defendant to such a proceeding, the PTO is required to expend substantially greater time and effort and incur substantially greater expense than it would otherwise in an appeal to the Federal Circuit. By requiring the dissatisfied applicant to pay "all the expenses of the proceeding," whether the applicant wins or loses, Congress obviously intended to reduce the financial burden on the PTO in defending such a proceeding. In light of this purpose, it makes good sense to construe "expenses" to include attorneys fees and paralegals fees because the time that PTO employees spend in defending the Director will constitute the majority of the PTO's expenses in such a proceeding -- in this case, over 98% of its expenses. Of course, if the dissatisfied applicant does not wish to pay the expenses of a de novo civil action, he may appeal the adverse decision of the PTO to the Federal Circuit.

Shammas argues that because defending decisions in federal court "is part of the ordinary duty of any administrative agency," awarding personnel expenses to the PTO would "impose a burden unlike anything else in the law." But this argument fails to recognize that agencies tasked with defending their actions in federal court are ordinarily able to limit the record

14

in court to the agency record and to have their factfinding reviewed deferentially. See, e.g., Corey v. Sec'y, U.S. Dep't of Housing & Urban Dev. ex rel. Walter, 719 F.3d 322, 325 (4th Cir. 2013) ("Pursuant to the Administrative Procedures Act, 'federal courts can overturn an administrative agency's decision . . . if it is arbitrary, capricious, an abuse of discretion, . . . otherwise not in accordance with the law, or unsupported by substantial evidence'" (omissions in original) (quoting Knox v. U.S. Dep't of Labor, 434 F.3d 721, 723 (4th Cir. 2006))); Trinity Am. Corp. v. U.S. Envtl. Prot. Agency, 150 F.3d 389, 401 n.4 (4th Cir. 1998) ("Review of agency action is limited to the administrative record before the agency when it makes its decision"). To be sure, it is relatively rare for statutes to allow aggrieved persons to choose between parallel proceedings to challenge agency action. But see 26 U.S.C. §§ 6213-6214, 7422 (granting aggrieved taxpayers a similar choice of forum). But regardless of its obscurity, § 1071(b)(3) plainly incentivizes trademark applicants to appeal routine trademark denials to the Federal Circuit. Cf. Hyatt v. Kappos, 625 F.3d 1320, 1337 (Fed. Cir. 2010) (en banc) (noting that "Congress imposed on the applicant the heavy economic burden of paying '[a]ll the expenses of the proceedings' regardless of the outcome" under the parallel patent provision in order to deter

15

applicants from "procedural gaming" (alteration in original)), aff'd and remanded, 132 S. Ct. 1690 (2012).

B

Our reading of § 1071(b)(3) is further supported by the statute's legislative history, which indicates that § 1071(b)(3) was intended as a straightforward funding provision, designed to relieve the PTO of the financial burden that results from an applicant's election to pursue the more expensive district court litigation. The "all the expenses" provision for trademark cases was adopted from a parallel provision in Title 35 (addressing patents), which in turn is rooted in an 1839 amendment to the Patent Act of 1836 (the "1836 Act"). The 1836 Act established "a fund for the payment of the salaries of the officers and clerks herein provided for, and all other expenses of the Patent Office." Act of July 4, 1836, ch. 357, § 9, 5 Stat. 117, 121 (emphasis added). Thus, in funding the Patent Office in 1836, Congress understood the term "expenses" to include the salaries of the Office's employees. In addition, the 1836 Act distinguished "expenses" from "costs," a term that the Act used in a manner consistent with the traditional understanding of court costs, as indicated by a provision that permitted courts in patent infringement actions "to adjudge and award as to costs as may appear to be just and equitable." Id. § 15, 5 Stat. at 123 (emphasis added). With these

16

understandings of the relevant terms, Congress amended the 1836 Act in 1839 to provide that "in all cases where there is no opposing party, a copy of the bill shall be served upon the Commissioner of Patents, when the whole of the expenses of the proceeding shall be paid by the applicant, whether the final decision shall be in his favor or otherwise." Act of March 3, 1839, ch. 88, § 10, 5 Stat. 353, 354 (emphasis added). It is therefore reasonable to conclude that "the whole of the expenses of the proceeding" included the Patent Office's salaries and did not refer only to court costs.

With the passage of the Lanham Act in 1946, Congress "incorporate[d] by reference" the procedures for appellate review of patent application denials in trademark proceedings. S. Rep. No. 87-2107, at 7 (1962), reprinted in 1962 U.S.C.C.A.N. 2844, 2850; see also Lanham Act, ch. 540, § 21, 60 Stat. 427, 435 (1946) (codified as amended at 15 U.S.C. § 1071(b)(3)) ("Any applicant for registration of a mark . . . who is dissatisfied with the decision of the Commissioner may appeal to the United States Court of Customs and Patent Appeals or may proceed under section 4915, Revised Statutes, as in the case of applicants for patents, under the same conditions, rules, and procedure[s] as are prescribed in the case of patent appeals or proceedings so far as they are applicable . . ."). In 1962, Congress eliminated the cross-reference to Title 35 and, in its place,

17

added to the Lanham Act language substantially similar to the language pertaining to the procedures for review of patent denials and to the payment of the PTO's associated expenses. See S. Rep. No. 87-2107, at 7 (explaining that the amendment "incorporate[d], with necessary changes in language, the various provisions of title 35 relating to such appeals and review"). Subsequent changes to § 1071(b)(3) have been mainly cosmetic and have not altered Congress' continued intent as to the payment of "all the expenses."

Thus, Congress' original understanding of "expenses" with respect to the 1836 Patent Act and the 1839 amendments provides substantial support for our interpretation of "expenses" as used in § 1071(b)(3).

IV

At bottom, we conclude that § 1071(b)(3) requires a dissatisfied ex parte trademark applicant who chooses to file an action in a district court challenging the final decision of the PTO, to pay, as "all the expenses of the proceeding," the salaries of the PTO's attorneys and paralegals attributed to the defense of the action. Accordingly, we affirm the judgment of the district court.

AFFIRMED

18

KING, Circuit Judge, dissenting:

The Lanham Act provision at issue here, 15 U.S.C. § 1071(b)(3), makes no reference to attorney's fees awards and does not reflect a Congressional intention to authorize such awards. Nevertheless, the panel majority affirms the district court's attorney's fees award to the PTO under § 1071(b)(3), in contravention of the American Rule. As Justice White explained for the Supreme Court in 1975, the American Rule "is deeply rooted in our history and in congressional policy; and it is not for us to invade the legislature's province by redistributing litigation costs." See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 271 (1975). Because the American Rule applies and the PTO should bear its own attorney's fees, I respectfully dissent.

A.

Our judiciary strongly disfavors awards of attorney's fees that are authorized solely by the courts — a well-settled tradition dating almost to our Nation's founding. See Arcambel v. Wiseman, 3 U.S. (3 Dall.) 306, 306 (1796) ("The general practice of the United States [courts] is in opposition to [attorney's fees awards]; and even if that practice were not strictly correct in principle, it is entitled to the respect of the court."). In recognition of the "power and judgment" of Congress, the federal courts defer to the legislative branch to

19

determine if a "statutory policy [authorizing such awards] is deemed so important that its enforcement must be encouraged." See Alyeska, 421 U.S. at 263-64. Thus, as we recently emphasized, absent "explicit statutory authority," the courts presume that the litigants will "bear their own legal costs, win or lose." See In re Crescent City Estates, LLC v. Draper, 588 F.3d 822, 825 (4th Cir. 2009). That principle — commonly known as the American Rule — should be recognized and applied here.[1]

The only issue we must resolve today is whether 15 U.S.C. § 1071(b)(3) "clearly and directly" provides for attorney's fees awards. See Crescent City, 588 F.3d at 825. For at least three compelling reasons, the statute fails to authorize such awards. First, the words "attorney's fees" are not found in § 1071(b)(3). Second, the statute otherwise provides no "clear support" for awards of such fees. See Unbelievable, Inc. v. N.L.R.B., 118 F.3d 795, 801 (D.C. Cir. 1997) (explaining that a court may not "infer a congressional intent to override the presumption that the American Rule erects against the award of attorney's fees without 'clear support' either on the face or in the legislative history of the statute"). Third, the background and history of § 1071(b)(3) fail to show that Congress intended

---

[1] The American Rule is the antithesis of the rule utilized in England, whereby successful litigants are entitled to recover their attorney's fees from the losing parties. See Ruckelshaus v. Sierra Club, 463 U.S. 680, 684 (1983).

20

to authorize such fee awards. See id. Accordingly, § 1071(b)(3) cannot overcome the presumption against fee awards embodied in the American Rule, and the district court's award of attorney's fees should be vacated.

## 1.

As an initial matter, Congress failed to use any language in § 1071(b)(3) of Title 15 that authorizes attorney's fees awards. Indeed, the term "attorney's fees" is absent from § 1071(b)(3). Of great importance, however, Congress has exercised its "explicit statutory authority" to authorize attorney's fees awards in at least five other provisions of Chapter 22 (Trademarks) of Title 15:

- 15 U.S.C. § 1114(2)(D)(iv) (imposing liability on party making material misrepresentations "for any damages, including costs and attorney's fees");

- 15 U.S.C. § 1116(d)(11) (authorizing, in action for wrongful seizure of goods or marks, award of "reasonable attorney's fee");

- 15 U.S.C. § 1117(a) (authorizing, in "exceptional cases," awards of "reasonable attorney fees" to prevailing parties);

- 15 U.S.C. § 1117(b) (authorizing recovery of "reasonable attorney's fee" in counterfeit mark litigation); and

- 15 U.S.C. § 1122(c) (specifying remedies of prevailing party as including "actual damages, profits, costs and attorney's fees").

21

Because Congress made multiple explicit authorizations of attorney's fees awards in Chapter 22 of Title 15 — but conspicuously omitted any such authorization from § 1071(b)(3) — we must presume that it acted "intentionally and purposely in the disparate . . . exclusion." See Clay v. United States, 537 U.S. 522, 528 (2003) (internal quotation marks omitted).

Furthermore, Congress has consistently shown that it knows how to draft a statute that authorizes attorney's fees awards. See, e.g., Stephens ex rel. R.E. v. Astrue, 565 F.3d 131, 138 (4th Cir. 2009). For example, Congress has on multiple occasions authorized such fee awards, independently of expenses and costs:

- 11 U.S.C. § 363(n) (authorizing trustee to recover "any costs, attorneys' fees, or expenses incurred");

- 12 U.S.C. § 1464(d)(1)(B)(vii) (requiring federal savings associations to pay "reasonable expenses and attorneys' fees" in enforcement actions);

- 26 U.S.C. § 6673(a)(2)(A) (requiring lawyers who cause excessive costs to pay "excess costs, expenses, and attorneys' fees"); and

- 31 U.S.C. § 3730(d)(4) (authorizing "reasonable attorneys' fees and expenses" to prevailing defendant in false claims suit).

On occasion, Congress has explicitly authorized a party to recover attorney's fees as part of expenses. See 12 U.S.C. § 5009(a)(1)(B) (holding party at fault liable for "interest and

22

expenses (including costs and reasonable attorney's fees and other expenses of representation)"); Fed. R. Civ. P. 37(a)(5)(A) (requiring party at fault to pay "reasonable expenses . . . including attorney's fees"). And, consistent with the American Rule, Congress excluded attorney's fees from the costs that are generally recoverable by prevailing parties in federal civil proceedings. See Fed. R. Civ. P. 54(d)(1) ("[C]osts — other than attorney's fees — should be allowed to the prevailing party."). The clear message of the foregoing is simple: if Congress had intended to authorize attorney's fees awards to the PTO under § 1071(b)(3), it would have said so. Because subsection (b)(3) does not mention attorney's fees, we have no right to judicially conjure up such a provision.

2.

Next, the plain terms of § 1071(b)(3) fail to show that Congress desired to provide for attorney's fees awards. Although "expenses" under § 1071(b)(3) is not defined, in its dictionary form the term "expenses" is generally synonymous with the word "costs." See Black's Law Dictionary 345, 577 (6th ed. 1990) (equating "cost" to expense and "expense" to cost); Merriam Webster's Collegiate Dictionary 282, 440 (11th ed. 2004) (defining "costs" as "expenses incurred in litigation," and "expense" as "cost"); Oxford Dictionary of English 615 (3d ed. 2010) (defining "expense" as "the cost incurred in or required

23

for something").[2]  Because Congress declined to add any language to § 1071(b)(3) to define the term "expenses," its omission must be deemed intentional.

3.

In view of the foregoing principles, the PTO's claim that it is entitled to recover its attorney's fees can only succeed "if an examination of the relevant legislative history demonstrates that Congress intended to give a broader than normal scope" to the phrase "all the expenses of the proceeding," in § 1071(b)(3).  See Summit Valley Indus. Inc. v. Local 112, 456 U.S. 717, 723 (1982).  The statute's legislative history, however, fails to indicate that Congress intended to authorize attorney's fees awards.[3]  As heretofore explained —

---

[2] Our Court has agreed that Congress could intend the phrase "all the expenses of the proceeding" to mean "more than that which is ordinarily included in the word 'costs.'"  Robertson v. Cooper, 46 F.2d 766, 769 (4th Cir. 1931).  In the context of the trademark statutes, however, the term "expenses" does not include "attorney's fees," in that such fees are explicitly referenced when authorized.  See 15 U.S.C. §§ 1114(2)(D)(iv), 1116(d)(11), 1117(a), 1117(b), and 1122(c); see also S. Rep. No. 93-1400, at 2 (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7133 (explaining, in support of amendment to Lanham Act, that "[e]xisting law since 1967 is that attorney fees are recoverable only in the presence of express statutory authority").

[3] In 1836, Congress established a new fund for the Patent Office — financed by the application fees of patent applicants — which it designated for the "salaries of the officers and clerks . . . and all other expenses" of the Office.  See Patent Act of 1836, ch. 357, § 9, 5 Stat. 117, 121.  The majority suggests that, in the 1836 Act, "Congress understood the term
(Continued)

24

and with repetition sometimes being healthy — Congress knows how to provide for awards of attorney's fees when it wants to do so.

The absence of supportive legislative history regarding the recovery of attorney's fees under § 1071(b)(3) is telling, particularly in light of the Supreme Court's 1975 decision in Alyeska. Congress responded to Alyeska, as the Court recognized in 1987, by "broadening the availability of attorney's fees in the federal courts." Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 444 (1987) (emphasis added). In the wake of Alyeska, Congress could readily have amended § 1071(b)(3) to broaden or explain the phrase "all the expenses of the proceeding." The only substantive amendment made by Congress, however, actually narrowed the scope of subsection (b)(3). See Trademark Law Revision Act of 1988, Pub. L. No. 100-667, § 120, 102 Stat. 3935, 3942 (barring court from awarding "unreasonable" expenses).[4] Accordingly, the legislative history of

---

'expenses' to include the salaries of the Office's employees," including the salaries of its attorneys. See Ante at 16. The 1836 enactment shows, however, that when Congress intended to authorize attorney's fees as a subset of "all . . . expenses," it so provided.

[4] Shammas contends here — and the PTO does not dispute — that, prior to 2013, the PTO had never sought an attorney's fee award under the patent and trademark laws. If such awards had (Continued)

§ 1071(b)(3) is insufficient to overcome the American Rule's presumption against fee shifting, and the majority's decision is erroneous.

                                    B.

There is no reason for our Court to disregard the American Rule in this case. Indeed, a primary justification for the Rule is that a party "'should not be <u>penalized</u> for merely . . . prosecuting a lawsuit.'" <u>Summit Valley</u>, 456 U.S. at 724 (quoting <u>Fleischmann Distilling Corp. v. Maier Brewing Co.</u>, 386 U.S. 714, 718 (1967) (explaining that "the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel")). By requiring Shammas to pay "all the expenses of the proceeding," my friends in the majority simply penalize him for seeking vindication of his trademark rights. In that circumstance, § 1071(b)(3) should not escape application of the American Rule.

Under today's ruling, the PTO will collect its attorney's fees even if Shammas prevails on the merits. Such a result flies in the face of the American Rule and must therefore overcome the Rule's presumption against fee shifting. As the

_____

been generally available, the PTO's silence in the face of such authority is more than passing strange.

26

Supreme Court has recognized, "intuitive notions of fairness" caution against requiring the litigant to pay the loser's attorney's fees absent "a <u>clear showing</u> that this result was intended" by Congress.  <u>See</u> <u>Ruckelshaus v. Sierra Club</u>, 463 U.S. 680, 685 (1983) (emphasis added).

## C.

Absent explicit statutory language authorizing attorney's fees awards, the courts can only speculate on whether the phrase "all the expenses of the proceeding" includes the PTO's attorney's fees.  Against the backdrop of the American Rule, however, the courts are not entitled to make educated guesses. In these circumstances, the American Rule precludes the PTO from recovering such fees under § 1071(b)(3).  Because I would vacate the attorney's fees award that was made to the PTO, I respectfully dissent.