WYNN, Circuit Judge, concurring in part and dissenting in part:
 

 This case addresses a problem that Booking.com chose to bring upon itself. Because trademark law does not protect generic terms, an online business, like Booking.com, has two options in choosing its domain name. On the one hand, it can choose to operate under a generic domain
 
 [1]
 
 that describes the nature of the services it offers, and thereby attract the wealth of customers who simply search the web for that service. However, in electing that benefit, the entity accepts a trade-off. It must forego the ability to exclude competitors from using close variants of its domain name. On the other hand, the entity can choose to operate under a non-generic domain name-and thereby potentially limit, at least before it has built consumer awareness of its branding, the universe of potential customers who will find its business. Trademark law affords an entity that selects this latter option a special benefit. It can bar competitors from trading on any goodwill and recognition it generates in its domain name.
 

 Booking.com chose the former approach-to operate under a generic domain name and forego the ability to exclude competitors from using close variants of its domain name. But in the face of recognizing that "booking" is a generic term, the district court creatively decided that combining the generic term "booking" with the generic top-level domain ".com" rendered it non-generic. In doing so, the district court's judgment-which the majority opinion concedes was grounded in legal error, but nonetheless declines to set aside-allows Booking.com to have its cake and eat it too. Booking.com gets to operate under a domain that merely describes the nature of its business
 
 and
 
 exclude its competitors from doing the same.
 

 Booking.com maintains that such a result is warranted to prevent "unscrupulous competitors [from] prey[ing] on its millions of loyal consumers," Appellee's Br. at 38. But to the extent Booking.com fears that its competitors are using the terms "booking" and ".com" in ways that might confuse its customers, "this is the peril of attempting to build a brand around a generic term."
 
 Advertise.com, Inc. v. AOL Advert., Inc.
 
 ,
 
 616 F.3d 974
 
 , 980 n.6 (9th Cir. 2010). Accordingly, although I agree with much of the analysis in the majority opinion,
 
 [2]
 
 I part ways with my colleagues' decision to nevertheless affirm the district court's judgment that BOOKING.COM is a protectable trademark.
 

 That decision rests upon my colleagues' determination that the district court's factual findings pertaining to genericness should be "accorded great deference,"
 
 Ante
 
 at 181, regarding whether a proposed
 mark is generic-
 
 i.e.
 
 , whether a proposed mark is nothing more than the "common name of a product or service itself,"
 
 Sara Lee Corp. v. Kayser-Roth Corp.
 
 ,
 
 81 F.3d 455
 
 , 464 (4th Cir. 1996) -which is a question of fact generally subject to clear error review,
 
 see
 

 Swatch AG v. Beehive Wholesale, LLC
 
 ,
 
 739 F.3d 150
 
 , 155 (4th Cir. 2014). But "we owe no deference to the district court's findings if they are derived as a result of the court's misapplication of the law."
 
 Sara Lee
 
 ,
 
 81 F.3d at 464
 
 (citation omitted);
 
 Pizzeria Uno Corp. v. Temple
 
 ,
 
 747 F.2d 1522
 
 , 1526 (4th Cir. 1984) ("[T]he clearly erroneous rule [will not] protect findings which have been made on the basis of the application of incorrect legal standards or made in disregard of applicable legal standards, such as burden of proof" (citations omitted)). When a finding derives from a district court's "application of an improper standard to the facts, it may be corrected as a matter of law."
 
 United States v. Singer Mfg. Co.
 
 ,
 
 374 U.S. 174
 
 , 194 n.9,
 
 83 S.Ct. 1773
 
 ,
 
 10 L.Ed.2d 823
 
 (1963). In such cases, the clearly erroneous standard is no longer applicable.
 
 See
 

 United States v. Rodriguez-Morales
 
 ,
 
 929 F.2d 780
 
 , 783 (1st Cir. 1991) ("Of course, if the lower court applies the wrong legal standard, no deference attaches, and we must proceed to correct the error.").
 

 Here, the district court rendered the legal "conclu[sion]" that "when combined with a[ ] [Secondary Level Domain], a [Top Level Domain] generally has source identifying significance and the combination of a generic [Secondary Level Domain] and a [Top Level Domain] is generally a descriptive mark that is protectable upon a showing of acquired distinctiveness."
 
 Booking.com B.V. v. Matal
 
 ,
 
 278 F.Supp.3d 891
 
 , 909 (E.D. Va. 2017). Put differently, the district court concluded that, as a matter of law, "the combination of a generic [Secondary Level Domain] and a [Top Level Domain]" is
 
 presumptively descriptive
 
 and protectable upon a showing of acquired distinctiveness.
 

 Id.
 

 Notably, in adopting this presumption, the district court expressly rejected the approach taken by the Federal Circuit in cases, like the instant case, involving a proposed trademark that combines a generic Secondary Level Domain with a Top Level Domain.
 
 See
 

 id.
 

 at 908-10
 
 . The majority opinion rejects that legal presumption but nevertheless defers to the district court's factual finding that BOOKING.COM is descriptive, and therefore protectable, on the theory that that finding was
 
 not tainted
 
 by the district court's legal error.
 
 See
 

 Ante
 
 at ---- n.9. But a close examination of the district court's opinion reveals that the district court's legal error did play a role in the court's ultimate determination that BOOKING.COM is descriptive.
 

 In particular, because the district court
 
 presumed
 
 that "the combination of a generic [Secondary Level Domain] and a [Top Level Domain]" is descriptive,
 
 Booking.com
 
 ,
 
 278 F.Supp.3d at 909
 
 , it subjected the registrant to a less onerous evidentiary burden for establishing descriptiveness than the law demands. This is evident for two reasons.
 

 First, the district court's ultimate determination-that the proposed mark BOOKING.COM is descriptive-conflicts with the determination that
 
 every other court
 
 has reached in cases, like the instant case, involving the registration or enforcement of a proposed mark composed of a generic Secondary Level Domain and a Top Level Domain.
 
 [3]
 
 For instance, the Federal Circuit
 found that the generic term "hotels" "did not lose its generic character by placement in the domain name HOTELS.COM."
 
 In re Hotels.com
 
 ,
 
 573 F.3d 1300
 
 , 1304 (Fed. Cir. 2009). Instead, consumers would "immediately understand that HOTELS.COM identifies a website" that provides "information about hotels or making reservations at hotels."
 

 Id.
 

 The Federal Circuit also affirmed the finding of the Trademark Trial and Appeal Board (the "Trademark Board") that many other websites that used the word "hotels" in their domain names, such as "all-hotels.com" and "web-hotels.com," demonstrated "a competitive need for others to use [the term] as part of their own domain names."
 

 Id.
 

 Likewise, in
 
 In re Reed Elsevier Properties
 
 , the Federal Circuit found it to be "abundantly clear" that the proposed mark in question, "LAWYERS.COM," was generic because "the relevant public would readily understand the term to identify a commercial web site providing access to and information about lawyers."
 
 482 F.3d 1376
 
 , 1379-80 (Fed. Cir. 2007) (internal quotation marks omitted).
 

 Similarly, in
 
 In re 1800Mattress.com IP, LLC
 
 , the Federal Circuit affirmed the Trademark Board's decision that the proposed mark MATTRESS.COM was generic because customers would naturally recognize the mark as referring to a commercial website providing retail services featuring mattresses.
 
 586 F.3d 1359
 
 , 1364 (Fed. Cir. 2009). Notably, the Federal Circuit rejected the applicant's argument-which Booking.com also advances in this case and on which the district court relied,
 
 see
 

 Booking.com
 
 ,
 
 278 F.Supp.3d at
 
 914 -that the term could not be generic because consumers did not refer to the stores as "mattresses.com[s],"
 

 id.
 

 (quoting
 
 In re 1800Mattress.com IP, LLC
 
 ,
 
 586 F.3d at
 
 1362 ). Instead, the court agreed with the Trademark Board that the relevant public would understand MATTRESS.COM to be "no more than the sum of its constituent parts"-an online provider of mattresses.
 

 Id.
 

 at 1363
 
 .
 

 Like the Federal Circuit, the Ninth Circuit has found that a generic Secondary Level Domain combined with a Top Level Domain does not generally amount to a protectable mark. In
 
 Advertise.com
 
 , the court considered whether AOL's claimed mark ADVERTISING. COM was protectable.
 
 616 F.3d at 977
 
 . The district court below enjoined Advertise.com, a putative competitor of AOL's Advertising.com, from
 using its trade name or any other name confusingly similar to ADVERTISING.COM, concluding that AOL would likely succeed on its claim that the standard text mark ADVERTISING.COM was descriptive.
 

 Id.
 

 The Ninth Circuit held that the district court abused its discretion in entering the injunction because-like in the instant case-the district court applied an incorrect legal standard in determining whether a mark composed of a generic Secondary Level Domain and Top Level Domain is enforceable.
 

 Id.
 

 at 982
 
 . Engaging in its own analysis under the appropriate legal standard, the court held that AOL was unlikely to succeed on the merits because "ADVERTISING.COM still conveys only the generic nature of the services offered."
 

 Id.
 

 at 981-82
 
 .
 

 Lower courts have followed
 
 Hotels.com
 

 ,
 

 Reed-Elsevier Properties
 

 ,
 

 1800Mattress
 
 .com, and
 
 Advertising.com
 
 and refused to award trademark significance to proposed marks, like BOOKING.COM, combining a generic Secondary Level Domain with a Top Level Domain.
 
 See, e.g.
 
 ,
 
 Borescopes R U.S. v. 1800Endoscope.com, LLC
 
 ,
 
 728 F.Supp.2d 938
 
 , 952 (M.D. Tenn. 2010) (finding that the use of the term "borescopes" in companies' domain names "generically describes the class of product each sells");
 
 Image Online Design, Inc. v. Core Ass'n
 
 ,
 
 120 F.Supp.2d 870
 
 , 878 (C.D. Cal. 2000) (noting that "a [Top Level Domain] and other non-distinctive modifiers of a URL like 'http://www' have no trademark significance");
 
 In Re Eddie Zs Blinds & Drapery, Inc.
 
 ,
 
 74 U.S.P.Q.2d 1037
 
 at *6 (T.T.A.B. 2005) (determining that BLINDSANDDRAPERY.COM was not one of the "exceptional circumstances" that should forestall a finding of genericness);
 
 In Re Martin Container, Inc.
 
 ,
 
 65 U.S.P.Q.2d 1058
 
 at *5 (T.T.A.B. 2002),
 
 appeal dismissed
 
 , 56 Fed. App'x. 491 (Fed. Cir. 2003) (finding CONTAINER.COM generic because the combination of "container" and a Top Level Domain "does not result in a compound term that has somehow acquired" the ability to function as an indication of source).
 

 A second indication that the district court's incorrect legal framework tainted its ultimate determination that BOOKING.COM is protectable is that BOOKING.COM is not like the types of marks courts have recognized as among the "rare" occasions when adding a generic Secondary Level Domain to a Top Level Domain does not create a generic mark. Because Top Level Domains generally convey only that a business is web-based, it is "only in rare circumstances" that the combination of a generic Secondary Level Domain, on its own incapable of source identification, and ".com" will produce a composite mark that "expand[s] the meaning of the mark."
 
 See, e.g.
 
 ,
 
 Advertise.com
 
 ,
 
 616 F.3d at 979
 
 (quoting
 
 In re Steelbuilding.com
 
 ,
 
 415 F.3d 1293
 
 , 1299 (Fed. Cir. 2005) ).
 

 As an example of the "rare circumstance" in which a Top Level Domain could provide additional non-functional information, the Federal Circuit considered the possibility of a brick-and-mortar company that sold tennis equipment and operated under the name "tennis.net."
 
 In re Oppedahl & Larson, LLP
 
 ,
 
 373 F.3d 1171
 
 , 1175 (Fed. Cir. 2004). The court noted the "witty double entendre related to tennis nets" created by the combination of "tennis" and ".net" rendered such a usage distinguishable from a standard proposed mark combining a generic Secondary Level Domain with a Top Level Domain.
 

 Id.
 

 Following
 
 Oppedahl
 
 's reasoning, if we were presented with a situation in which the ".com" was used in a way that played upon or expanded the meaning of its ordinary use as a Top Level Domain, registration might be appropriate. For instance, a
 website cataloguing and discussing romantic comedy movies of the 1980s, 1990s, and 2000s called "rom.com" might expand upon the ordinary meaning of the Top Level Domain, as it would both describe the commercial nature of the website, as well as convey the subject matter of the website.
 
 [4]
 

 The tennis.net and rom.com examples are readily distinguishable from the instant case. The district court did not find-nor has Booking.com ever argued-that the combination of "booking"-a generic term-and ".com" amounts to a "witty double entendre" that expands the ordinary meanings of the proposed mark's component parts. Rather, BOOKING.COM is a run-of-the-mill combination of a generic term with a Top Level Domain that creates a composite mark concerning the subject or business encompassed by the generic term-precisely the type of mark that the courts in
 
 Hotels.com
 
 ,
 
 Reed Elsevier Properties
 
 ,
 
 1800Mattress.com
 
 , and
 
 Advertise.com
 
 found did not amount to the "rare circumstance" that warranted affording the domain name trademark protection.
 

 BOOKING.COM's mark differs substantially from the types of proposed marks fitting into the "rare circumstances" in which a generic Secondary Level Domain and a Top Level Domain are protectable. This provides further evidence that the district court's incorrect legal test tainted its ultimate factual determination. Because the district court erroneously believed that marks combining a generic Secondary Level Domain and Top Level Domain are presumptively protectable, it never examined-as it should have-whether BOOKING.COM amounted to one of the "rare circumstances" when such marks are protectable.
 

 The district court's incorrect legal test-the application of which my colleagues leave in place-upsets the careful balance the law has struck between assisting consumers to identify the source of goods and preserving the linguistic commons. Presumptively allowing protection of domain names composed of a generic Secondary Level Domain and Top Level Domain conflicts with the law's longstanding refusal to permit registration of generic terms as trademarks.
 

 Fundamentally, the proscription against allowing generic terms to be trademarked stems from considerations regarding the monopolization of language. To permit generic terms to be trademarked "would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are."
 
 CES Publ'g Corp. v. St. RegisPubl'ns, Inc.
 
 ,
 
 531 F.2d 11
 
 , 13 (2d Cir. 1975). This Court has long sought to foreclose such a result, holding that no single competitor has the right to "corner the market" on ordinary words and phrases, thereby enclosing the "public linguistic commons."
 
 Am. Online, Inc. v. AT&T Corp.
 
 ,
 
 243 F.3d 812
 
 , 821 (4th Cir. 2001) ;
 
 see, e.g.
 
 ,
 
 Ashley Furniture Indus. v. Sangiacomo N.A.
 
 ,
 
 187 F.3d 363
 
 , 369 (4th Cir. 1999) (noting that the trade name "Pet
 Store" for a shop that sold pets would be generic).
 

 Importantly, the law forbids trademarking generic terms, even when a putative mark holder engages in successful efforts to establish consumer recognition of an otherwise generic term. "[N]o matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise
 
 and what success it has achieved in securing public identification
 
 , it cannot deprive competing manufacturers of the product of the right to call an article by its name."
 
 Abercrombie & Fitch Co. v. Hunting World, Inc.
 
 ,
 
 537 F.2d 4
 
 , 9 (2d Cir. 1976) (emphasis added). Therefore, even advertising, repeated use, and consumer association will not warrant affording trademark protection to a generic term.
 
 See
 

 Am. Online,
 

 243 F.3d at 821
 
 ("[T]he repeated use of ordinary words ... cannot give [a single company] a proprietary right over those words, even if an association develops between the words and [that company].");
 
 see also
 

 Surgicenters of Am., Inc. v. Med. Dental Surgeries, Co.
 
 ,
 
 601 F.2d 1011
 
 , 1017 (9th Cir. 1979) (finding that even if a generic term becomes identified with a first user, trademark protection will not be available in the generic term).
 

 The policy considerations underlying trademark law's refusal to protect generic terms apply regardless of whether the putative mark holder is a traditional brick-and-mortar business or located in cyberspace. As the PTO argues, a grocery business called The Grocery Store would-and should-never receive trademark protection because the name is generic-regardless of whether consumers associated the name with a particular entity. However, under the district court's erroneous approach-the consequences of which the majority leaves in place-if enough consumers recognized an online grocery business called "grocerystore.com," that business would be entitled to trademark protection. There is no basis in law or policy for drawing such a distinction. Just as competing brick-and-mortar grocery stores need to make use of the term "grocery" to inform customers of the nature of their businesses, so too do competing internet grocery providers need to make use of the term "grocery" in their domain names.
 

 The district court's treatment of marks combining generic Secondary Level Domains and Top Level Domains as presumptively protectable also conflicts with precedent foreclosing protection of marks that combine a generic term with a generic commercial designation (e.g., "Company," "Corp.," or "Inc."). More than a hundred years ago, the Supreme Court held that the addition of commercial designations like these does not transform otherwise generic terms into protectable marks.
 
 See
 

 Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co.
 
 ,
 
 128 U.S. 598
 
 , 602-03,
 
 9 S.Ct. 166
 
 ,
 
 32 L.Ed. 535
 
 (1888).
 

 Under
 
 Goodyear's
 
 , a brick-and-mortar reservation service operating under the term The Booking Company would not be able to receive a trademark in that name, regardless of the degree of brand recognition it generated or the number of consumers who identified it as a brand.
 
 See
 

 Am. Online
 
 ,
 
 243 F.3d at
 
 821 ;
 
 Abercrombie
 
 ,
 
 537 F.2d at 9
 
 . Yet, under the district court's approach, the term BOOKING.COM is presumptively protectable.
 
 Compare
 

 Advertise.com
 
 ,
 
 616 F.3d at 982
 
 ("That '.com,' when added to a generic term, 'indicates a commercial entity' does not suffice to establish that the composite is distinctive, much as AOL would not have created a
 protectable mark by adopting the designation 'Advertising Company.' ").
 

 The district court concluded that "
 
 Goodyear's
 
 reasoning regarding corporate designators does not apply with equal force to domain names" because "adding a [Top Level Domain] such as '.com' to a generic [Secondary Level Domain] does more than indicate that a company offers services via the internet; it indicates a unique domain name that can only be owned by one entity."
 
 Booking.com
 
 ,
 
 278 F.Supp.3d at 910
 
 . But as the Federal Circuit has explained, "[a]lthough not a perfect analogy, the comparison of [Top Level Domains] (i.e., '.com,' '.org,' etc.) to entity designations such as 'Corp.' and 'Inc.' has merit."
 
 Oppedahl
 
 ,
 
 373 F.3d at 1175
 
 . "The commercial impression created by '.com' is similar to the impression created by 'Corp.' and 'Co.', that is, the association of a commercial entity with the mark."
 

 Id.
 

 Additionally, the difference between an entity designation such as "Corp." and a Top Level Domain recognized by the district court is attributable to the functional nature of the internet. Although most Top Level Domains do suggest a relationship with the internet, a domain name "serves the purely technological function of locating a Web site in cyberspace."
 
 McCarthy on Trademarks
 
 , § 7:17.50. Functional features, however, cannot be the basis for trademark protection: "[E]ven if a functional feature has achieved consumer recognition (secondary meaning) of that feature as an indication of origin, the feature cannot serve as a legally protectable symbol."
 
 Am. Online, Inc.
 
 ,
 
 243 F.3d at 822-23
 
 . Yet that is precisely what the district court's legal test-the application of which my colleagues in the majority leave in place-does.
 

 It is particularly important that we ensure that the district court's ultimate finding that BOOKING.COM is descriptive, and therefore protectable, was not tainted by its erroneous legal test because, as the PTO argues, trademark registration will provide Booking.com with a weapon to freeze out potential competitors. As explained above, trademark law's proscription on the registration of generic terms prevents firms from monopolizing language and allows competitors to "describe [their] goods as what they are."
 
 CES Publ'g
 
 ,
 
 531 F.2d at 13
 
 .
 

 I believe that this Court's affirmance of the district court's judgment-even as it rejects the district court's legal analysis-unjustifiably empowers Booking.com to monopolize language, thereby enclosing the linguistic commons and adversely affecting competitors in precisely the manner that trademark law seeks to forestall. Put simply, the majority opinion's judgment will directly disadvantage Booking.com's competitors by taking away their ability to use the term "booking" in their own website domain names. Indeed, any competitors that attempt to use the term "booking" will face the risk of a costly, protracted, and uncertain infringement lawsuit.
 

 Booking.com and the majority opinion assert that the potential harm to competitors-and therefore consumers-is minimal because: (1) the doctrine of descriptive fair use will prevent Booking.com from monopolizing the term; (2) the protection of BOOKING.COM extends only to
 
 hotel
 
 reservations, not to other reservation services; and (3) domain names are unique. I find none of these assertions persuasive.
 

 Descriptive fair use is an affirmative defense that allows a competitor to use words contained in a trademark in their ordinary sense to describe the competitor's own goods or services to consumers.
 
 See
 

 KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.
 
 ,
 
 543 U.S. 111
 
 , 121-22,
 
 125 S.Ct. 542
 
 ,
 
 160 L.Ed.2d 440
 
 (2004). According to Booking.com, affording BOOKING.COM trademark protection will not adversely affect competition by depriving putative competitors from describing the nature of their business because such protection "will have no effect on competitors' right to make descriptive fair use of the word 'Booking.com.' " Appellee's Br. at 38. The district court agreed, noting that even if Booking.com were to successfully assert a
 
 prima facie
 
 case of trademark infringement by showing a likelihood of confusion between BOOKING.COM and a competitor's domain, the competitor could make use of the descriptive fair use doctrine to avoid liability.
 

 For several reasons, I fear that the doctrine of descriptive fair use will provide Booking.com's competitors cold comfort. I am not convinced that the descriptive fair use defense will provide significant protection to competitors using the term "booking" in their own domain names. As the Ninth Circuit has explained, "granting trademark rights over a domain name composed of a generic term and a [Top Level Domain] grants the trademark holder rights over far more intellectual property than the domain name itself."
 
 Advertise.com
 
 ,
 
 616 F.3d at 980
 
 . Such trademark protection "would potentially reach almost any use of the generic term in a domain name."
 

 Id.
 

 at 981
 
 (noting that any one of the thirty-two other domain names containing some form of the word "advertise" would be placed at risk of a lawsuit). Thus, notwithstanding the doctrine of descriptive fair use, a firm that obtains a trademark in a domain name that describes the service the firm provides, like Booking.com, may have the power "to foreclose competitors from using a vast array of simple, easy to remember domain names and designations that describe [such] services."
 

 Id.
 

 Additionally, descriptive fair use is an affirmative defense, not an immunity from suit. Any online reservation business that chooses to include "booking" in its domain name will face the risk of defending an expensive infringement lawsuit. As a result, commercial competitors seeking to avoid litigation risk and expenses-even if they might ultimately prevail on descriptive fair use grounds-will be chilled from using the term.
 

 My colleagues in the majority also emphasize that the district court awarded Booking.com protection for the mark
 
 only
 
 for Class 43 hotel services, not Class 39 travel agency services, meaning that "protection over BOOKING.COM would not
 
 necessarily
 
 preclude another company from using, for example, carbooking.com or flightbooking.com."
 
 Ante
 
 at 187 (emphasis added). But even assuming my colleagues' optimism that Booking.com could not preclude competitors from using domain names containing the word "booking" is well-founded-a decidedly uncertain question,
 
 see
 

 Advertise.com
 
 ,
 
 616 F.3d at
 
 980-81 -I see no reason why Booking.com should be entitled to monopolize the generic term "booking" in the online hotel reservation industry by precluding competitors from using domain names like hotelbooking.com or ehotelbooking.com,
 
 [5]
 
 which likewise describe such competitors' services "as what they are."
 
 CES Publ'g
 
 ,
 
 531 F.2d at 13
 
 . Put simply, there is no reason why monopolization of language should be allowed
 in the internet domain name context for
 
 any
 
 class of services when trademark law has consistently maintained that generic terms such as "booking" should be available in the public linguistic commons for all competitors to use.
 

 Finally, my colleagues in the majority seek to assuage concerns that granting trademark protection over BOOKING.COM will prevent other companies from using variants of the mark by emphasizing that, to enforce the mark, Booking.com will have to prove that there is a "likelihood of confusion" with the allegedly infringing mark.
 
 Ante
 
 at 187. According to the majority, "[g]iven that domain names are unique by nature and that the public may understand a domain name as indicating a single site, it may be more difficult for domain name plaintiffs to demonstrate a likelihood of confusion."
 

 Id.
 

 Even accepting my colleagues' assumption that Booking.com will have difficulty proving likelihood of confusion-again, an uncertain question-affording protection to BOOKING.COM would still likely chill competition in the online booking space. Put simply, putative competitors may-and likely will-choose not to operate under domain names that include the word "booking"-even if that term best describes the service they offer-because they do not want to incur the expense and risk of defending an infringement action.
 

 In sum, the district court's opinion reveals that its incorrect understanding of the governing legal framework likely tainted its finding that BOOKING.COM is distinctive, and therefore protectable. Because the district court's erroneous legal test factored into its ultimate factual determination as to descriptiveness, I cannot concur in my colleagues' decision to affirm the district court's judgment. Accordingly, with great respect for my good colleagues in the majority, I dissent.
 

 A domain name, the string of text used to look up the internet protocol address for a particular internet site, is made up of a Top Level Domain and a Secondary Level Domain. The Top Level Domain is the final portion of the web address-such as ".com," ".gov," or ".edu"-that signifies the category of website: i.e. commercial, government, or educational. The Secondary Level Domain is the preceding part of the web address. Well-known Secondary Level Domains include "facebook," "amazon" and "google." Thus, in the domain name http://www.booking.com, ".com" is the Top Level Domain, whereas "booking" is the Secondary Level Domain.
 

 I agree with much of the analysis in the majority opinion. The majority opinion is correct that in determining whether a proposed trademark is a generic term not subject to protection, courts must "look to the proposed mark
 
 as a whole
 
 ."
 
 Ante
 
 at 181, 184-85 (emphasis retained). Accordingly, I join my colleagues and our sister circuits in declining "to adopt a per se rule against protecting domain names, even where they are formed by combining generic terms with [Top Level Domains]."
 
 Ante
 
 at 186. Also like my colleagues, I believe that on only "
 
 rare
 
 occasion[s]" should the combination of a generic Secondary Level Domain and a Top Level Domain result in a protectable trademark.
 
 Ante
 
 at 186-87 (emphasis added). And like my colleagues, I conclude the district court committed legal error in holding that "a [Top Level Domain] like .com generally has source-identifying significance when added to a[ ] [Secondary Level Domain] like booking, and that a mark composed of a generic [Secondary Level Domain] like booking together with a [Top Level Domain] is usually a descriptive mark eligible for protection upon a showing of secondary meaning."
 
 Ante
 
 at 185 n.9. I also join my colleagues in the portion of the majority opinion affirming the district court's granting of attorneys' fees to the U.S. Patent & Trademark Office ("PTO").
 
 Ante
 
 at 188. In particular, I agree that
 
 Shammas v. Focarino
 
 ,
 
 784 F.3d 219
 
 (4th Cir. 2015), remains the controlling precedent in this circuit.
 

 The district court found-and I agree-that "by itself, the word 'booking' is generic for the classes of hotel and travel reservation services recited in plaintiff's applications."
 
 Booking.com
 
 ,
 
 278 F.Supp.3d at 905
 
 . Likewise, courts and commentators have long stated that a Top Level Domain is not protectable. For instance, the PTO has long stated that Top Level Domains "generally serve no source-identifying function." TMEP § 1209.03(m) (5th ed. 2007). This position has been consistently held in federal courts.
 
 See
 

 Advertise.com
 
 ,
 
 616 F.3d at 978
 
 (finding that a Top Level Domain merely reflects an online commercial organization). Additionally, the leading treatise on trademark law has stated that a Top Level Domain has no ability to distinguish one source from another. 2 J. Thomas McCarthy,
 
 McCarthy on Trademarks and Unfair Competition
 
 , § 7:17.50 (5th ed. 2018) ("The '.com' portion of the domain name has no trademark significance and is essentially the generic locator for all names in that top level domain."). In this way, a Top Level Domain is similar to other common web address components, such as "http://www." and ".html."
 

 Id.
 

 Because all websites must contain some form of Top Level Domain, such as ".com" or ".gov.," there is no unique source-identifying information. Similarly, in trademark infringement analyses, Top Level Domains have long been considered irrelevant to the strength of one's mark, as they only demonstrate,
 
 inter alia
 
 , a website's commercial, governmental, or organizational nature.
 
 See
 

 Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.
 
 ,
 
 174 F.3d 1036
 
 , 1055 (9th Cir. 1999) (refusing to consider the ".com" portion of the web address when comparing marks in a case of potential infringement).
 

 "Rom com" is a common abbreviation for the "romantic comedy" genre of movies, whose plots revolve around the humorous developments and lighthearted tensions that occur in a romantic couple's bourgeoning relationship, while typically culminating in a happy ending.
 
 See
 
 https://www.merriam-webster.com/dictionary/romcom. Although rom.com differs from tennis.net in that the Secondary Level Domain arguably is not a generic term, as "rom" is a shorthand reference for romantic, the domain name rom (dot) com is, as a composite term, both a generic descriptor and a "witty" play on that descriptor.
 

 Several hotel booking websites have domain names combining, in various ways, "booking" with ".com," including "bookingcenter.com," "ebookers.com," "bookingwhiz.com," "hotelbooking.com," "bookit.com," and "bookingbuddy.com." J.A. 337-39.